430 F.Supp. 668 (1977)
Joseph DONNELL, for himself and for all other persons similarly situated, Plaintiff,
v.
GENERAL MOTORS CORPORATION, a corporation, et al., Defendants.
No. 74-292C(4).
United States District Court, E. D. Missouri, E. D.
April 27, 1977.
*669 Frankie M. Freeman, Charles R. Oldham, St. Louis, Mo., for plaintiff.
James E. McDaniel, Barnard, Baer, Lee, Timm & McDaniel, Levin & Weinhaus, St. Louis, Mo., for defendants.

MEMORANDUM
NANGLE, District Judge.
Plaintiff Joseph Donnell brought this suit alleging discrimination on the basis of race. Although denominated as a class action, plaintiff did not plead the existence of a class in his complaint, nor did he seek to certify a class. Accordingly, the Court construes this suit to be an individual one.
This case was tried to the Court sitting without a jury. In accordance with the requirements of Rule 52, Federal Rules of Civil Procedure, the Court hereby makes the following findings of fact and conclusions of law:

*670 FINDINGS OF FACT
(1) Plaintiff Joseph Donnell is a black male citizen of the United States and was at all times relevant herein a resident of the state of Missouri. Defendant General Motors Corporation [GM] is a corporation organized and existing under the laws of the state of Delaware and is an employer within the meaning of 42 U.S.C. § 2000e(b). Defendant International Union, United Automobile, Aerospace and Agricultural Implement Workers of America and Local 25 thereof are labor organizations within the meaning of 42 U.S.C. § 2000e(d) and (e).
(2) Plaintiff had been employed by GM at its Shell Plant until March 30, 1970 when he was laid off. He had been employed by GM at its Automobile Assembly Plant in St. Louis, Missouri, since May 15, 1970. He is and has been a member of both the International and Local unions.
(3) Defendant GM operates an Apprentice Program and an Employee-In-Training [E.I.T.] Program. The Apprentice Program takes four years at the end of which the employee is classified as a journeyman skilled tradesman. The E.I.T. program takes eight years after which the employee is classified as a skilled tradesman. After four years in the E.I.T. program, an employee attains seniority within the program and is designated as an Employee-In-Training-Seniority, or E.I.T.S. There are no formal education requirements for entry into the E.I.T. program. Entry is determined on the basis of seniority and qualifications; unless an applicant's qualifications are far superior to those of other applicants, however, seniority prevails. Accordingly, in most instances, seniority determined entry into the E.I.T. program.
(4) While at GM's Shell Plant, plaintiff was classified as a cutter grinder E.I.T. from January 30, 1967 to January 12, 1969. Plaintiff was classified as a machinist-tool room E.I.T. from March 17, 1969 through October 26, 1969. There was no skilled trade known as cutter grinder or as machinist-tool room at the Assembly Plant. The only skilled trades available at the Assembly Plant were air conditioning and/or refrigeration control, blacksmith, bricklayer, carpenter, electrician, inspector-layout, millwright, painter and glazier, pipefitter, power house-fireman, power house-repairman, tinsmith, tool maker-jig and fixture, tool repair-portable power driver, truck repair-gas and electric, and welder-maintenance-gas and arc.
(5) Plaintiff filed an application for entry into the E.I.T. program on June 10, 1970, July 8, 1970 and July 13, 1970. All of the employees admitted into the E.I.T. program since January 1, 1970 through September 21, 1973 had many more years of seniority than did plaintiff. There have been no employees admitted into the E.I.T. program since September 21, 1973. The evidence failed to establish that plaintiff was more qualified than those admitted into the E.I.T. program.
(6) On July 6, 1970, plaintiff filed an Application for Apprenticeship card, indicating that he desired entry to the Apprentice Program. At the time of this application, GM had a requirement that entrants to the Apprentice Program must be a high school graduate and/or have an equivalent education by having successfully completed a General Education Development test with (1) at least a final grade average of "C", or (2) at least one year of algebra with a final grade average of "C" or better; or (3) at least one year of geometry with a final grade average of "C" or better. Plaintiff did not meet these qualifications.
(7) On January 27, 1972, plaintiff was injured when he allegedly fell into a five foot deep pit at GM while working on the truck assembly line. Plaintiff has filed, and still has pending, a Workmen's Compensation claim. Plaintiff is now on extended disability leave.
(8) The evidence adduced at trial totally failed to establish that defendant unions did not accept or process grievances because of plaintiff's race. The evidence also failed to establish that any of the union's actions with reference to plaintiff were hostile, discriminatory or arbitrary.
*671 (9) The total population of the St. Louis Standard Metropolitan statistical area, from which defendant GM draws its employees, is 2,363,017, of which 16.03% are black.
(10) From 1969 through 1972 there were 26 entries in the Apprentice Program. Of that number 23, or 83.9% were white and 2, or 11.5%, were black.
(11) From the period 1969 through 1975, there were 1,012 applicants for the Apprentice Program. Of that number, 66% were white and 34% were black. Of the forty applicants admitted, 80% were white and 20% were black. Out of the total number of black applicants, 12.4% were rejected for failure to meet the high school or equivalent requirement or for failure to attain an average "C". Of the total number of white applicants, 12.7% were rejected on the same ground. Thus, the educational requirements had no disparate impact upon black applicants.
(12) Since June 10, 1970, there have been 23 entrants to the E.I.T. program, of whom 17.4% were black. As of December 31, 1969, there were 3 minority employees in the E.I.T. program or 4.6%; as of June 30, 1970, there were 4 minority employees in the program, or 5.6%; and as of March 31, 1971, there were 6 minority employees in the program, or 7.4%.
(13) The total number of males age 14 or over in the St. Louis Standard Metropolitan statistical area possessing a high school diploma is 367,136, or 46.07% of the male population age 14 or over. Of that number, 31,337 are black high school graduates, or 27.88% of the 46.07%.
(14) Plaintiff filed charges with the Equal Employment Opportunity Commission and received notice of his right to sue. Plaintiff, however, did not file a charge against defendant International Union.

CONCLUSIONS OF LAW
This Court has jurisdiction over the subject matter and the parties to this suit in accordance with 28 U.S.C. § 1343 and 29 U.S.C. § 151 et seq. This Court has jurisdiction over the subject matter and over all parties with the exception of defendant International Union in accordance with 42 U.S.C. § 2000e et seq. It is the Court's conclusion that jurisdiction pursuant to 42 U.S.C. § 2000e et seq. does not exist with relation to the International Union because of plaintiff's failure to file charges with the Equal Employment Opportunity Commission against said union. Mickel v. South Carolina State Employment Service, 377 F.2d 239 (4th Cir. 1967), cert. denied, 389 U.S. 877, 88 S.Ct. 177, 19 L.Ed.2d 166 (1967); Jamison v. Olga Coal Company, 335 F.Supp. 454 (S.D.W.Va.1971).
Plaintiff has totally failed to adduce sufficient evidence of discrimination against him by the union. Plaintiff has also failed to adduce any evidence that the union did not accept, process, or withdraw his grievances in good faith. Accordingly, judgment will be entered for defendant unions. Cf., McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973); Griggs v. Duke Power Company, 401 U.S. 424, 91 S.Ct. 849, 28 L.Ed.2d 158 (1971); Vaca v. Sipes, 386 U.S. 171, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967).
In order to establish a prima facie case of racial discrimination, plaintiff must establish
(i) that he belongs to a racial minority; (ii) that he applied and was qualified for a job for which the employer was seeking applicants; (iii) that, despite his qualifications, he was rejected; and (iv) that, after his rejection, the position remained open and the employer continued to seek applicants from persons of complainant's qualifications. McDonnell Douglas Corporation v. Green, supra at 802, 93 S.Ct. at 1824.
With reference to the E.I.T. program, plaintiff did not establish that he was qualified for the openings. It was not established that the training which he had at the Shell Plant made him qualified for the training positions open at the Assembly Plant. The openings were filled on the basis of qualifications and seniority, with seniority prevailing if the applicants' qualifications were *672 basically equal. Plaintiff has failed to establish that he was more qualified than any others who were accepted in the E.I.T. program. He does not contest that those admitted had more seniority than he did, nor does he contest the use of seniority as a criteria. Accordingly, the Court concludes that plaintiff was not the subject of discrimination with reference to the E.I.T. program.
Plaintiff contends that the educational requirement of the Apprentice Program was a neutral policy having a discriminatory impact upon blacks. It is not disputed that fewer blacks have attained a high school diploma than have whites. In Green v. Missouri Pacific Railroad Company, 523 F.2d 1290 (8th Cir. 1975), the court held that a plaintiff could establish that a policy had a disproportionate racial impact by statistical evidence. The three methods to be so employed were to look (1) "whether blacks as a class (or at least blacks in a specified geographical area) are excluded by the employment practice in question at a substantially higher rate than whites"; (2) "a comparison of the percentage of black and white job applicants actually excluded by the employment practice or test of the particular company or governmental agency in question"; and (3) "the level of employment of blacks by the company or governmental agency in comparison to the percentage of blacks in the relevant geographical area". Id. at 1293-94. Plaintiff has not adduced any evidence of the employment of blacks at defendant's Plant. He has adduced evidence, however, as to the impact of the educational requirements on blacks as a class in the geographic area and as to the number actually excluded by the employment practice. From the statistical evidence so adduced, it is clear that blacks as a class would be excluded at a higher rate than would whites since the statistical evidence establishes that blacks are less likely to have a high school diploma than whites. The comparison, however, of white and black applicants actually excluded by the educational requirements reveals that there is absolutely no disparate impact; white and black applicants were excluded because of a lack of the requisite education at almost the same rate, with whites being excluded at a slightly higher rate.
The Court is presented herein with the unusual circumstance that plaintiff would establish a prima facie case if that test were the impact of the requirement upon blacks in general and would not establish a prima facie case if the test were the impact of the requirement upon black applicants. The Court is compelled to conclude that plaintiff has not established a prima facie case. It would be illogical to conclude that plaintiff has established a prima facie case of racial discrimination by establishing that blacks in the geographic area would be excluded at a higher rate than whites because of an employment practice when the evidence establishes that blacks, in fact, are not excluded at a higher rate. The question of racial discrimination can not be answered in a statistical vacuum. Whether an employer has discriminated against blacks depends on the factual context underlying the claim. Here, the facts show that blacks are not excluded by the practice. To conclude that plaintiff has established his claim by statistical evidence indicating that blacks in general would be excluded is inconsistent in the present context.
Accordingly, judgment will be entered in defendants' favor.