456 F.Supp. 879 (1978)
Calvin JACKSON, Plaintiff,
v.
The CURATORS OF the UNIVERSITY OF MISSOURI, a Public Corporation of the State of Missouri, Arnold Grobman, in his capacity as Chancellor of the University of Missouri, St. Louis, John Perry, Individually and in his capacity as Chancellor for Administrative Affairs, Paul Czervinske, Individually and in his capacity as Personnel Director, James Nelson, Individually and in his capacity as Chief of Campus Police, University of Missouri, Defendants.
No. 77-351 C (2).
United States District Court, E. D. Missouri, E. D.
August 29, 1978.
David A. Lang, Clayton, Mo., for plaintiff.
Jackson A. Wright, Marvin E. Wright, James S. Newberry, and Ted D. Ayres, Columbia, Mo., for defendants.

MEMORANDUM
WANGELIN, District Judge.
This action challenges defendants' hiring practices with regard to its security force. Plaintiff alleges that a requirement that campus patrolmen have two years of college *880 education is not job related and operates to discriminate against blacks. The suit is based upon 42 U.S.C. § 1981 and Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e. The Court has jurisdiction pursuant to 28 U.S.C. § 1343 and 42 U.S.C. § 2000e-5(f). The following discussion constitutes the Court's findings of fact and conclusions of law.
The Curators of the University of Missouri operate a campus in St. Louis, Missouri, under a corporate charter issued pursuant to § 172.020 RSMo 1969. The St. Louis campus is known as the University of Missouri, St. Louis (UMSL). The individual defendants are or were employees of UMSL.
Plaintiff is a black male, a resident of St. Louis, and a citizen of the United States. In 1968 he contacted UMSL about an advertised custodian's job. He was interviewed by Paul Czervinske, a former high school classmate. With Czervinske's assistance, plaintiff obtained a position as a receiving clerk in the University bookstore. About one year later he was promoted to a security guard in the bookstore.
Within the campus security force there are various classifications. Three of them, in ascending order of both responsibility and compensation, are security guard, patrolman and police sergeant. The bookstore security guard position was reclassified from a patrolman's position about six months before plaintiff took the job. Both the patrolman and the police sergeant positions require two years of college education. The security guard job does not.
On various occasions between 1971 and 1976, plaintiff either sought employment as a patrolman or asked to be reclassified as a patrolman. He also applied for an opening as a police sergeant.[1] Plaintiff failed to receive a promotion or reclassification because he did not meet defendants' educational requirements.
On February 12, 1976, plaintiff filed a charge of racial discrimination with the Equal Employment Opportunity Commission. After that charge was filed plaintiff was offered a position as a patrolman. The position had become vacant when its former occupant became a police sergeant. Plaintiff declined the offer on the advice of the Equal Employment Opportunity Commission. On March 30, 1976, plaintiff's gun was taken from him by his immediate supervisor.
Plaintiff's theory is that the two-year college requirement is an otherwise neutral factor which has a disparate impact upon the employment of blacks. Griggs v. Duke Power Co., 401 U.S. 424, 91 S.Ct. 849, 28 L.Ed.2d 158 (1971). Plaintiff argues that he has made a sufficient statistical showing to shift the burden of proof and require defendants to demonstrate that the educational requirement is a business necessity. See Green v. Missouri Pacific R. R. Co., 523 F.2d 1290 (8th Cir. 1975). Plaintiff also maintains that the loss of his gun was in retaliation for his filing an E.E.O.C. charge. Basically the evidence showed two things. The first is that, in the St. Louis metropolitan area, significantly fewer black persons have two years of college education than do white persons. This is true in terms of both raw numbers and as reflected as percentages of black and white populations. The second is that the actual percentage of blacks employed by defendants as patrolman on a security force are not so skewed. The census figures cited to this Court in various cases indicate that the St. Louis metropolitan area has a population which is about seventeen to nineteen per cent black. The testimony in this case indicated that about seventeen per cent of the population is black. From 1971 to the present, over twenty per cent of the UMSL security force has been black.
Interpretation of these figures is somewhat a problem. Green v. Missouri Pacific, supra, said that "a disproportionate racial impact may be established statistically in any of three ways." 523 F.2d at 1293. Simply stated, those tests are: (1) to examine *881 whether the general population indicates that blacks as a class would be excluded by the challenged requirements  as they are here; (2) to examine the percentage of persons actually excluded by the challenged requirement  no evidence was offered on this point; and (3) to examine the level of employment by defendant in the relevant area  here the level is satisfactory. Green, supra, 523 F.2d at 1293-94.
In Donnell v. GM Corp., 430 F.Supp. 668 (E.D.Mo.1977), Judge John F. Nangle was faced with a similar case. Plaintiff had shown a disparate impact by the use of the first and third tests but not the second. Judge Nangle held that:
It would be illogical to conclude that plaintiff has established a prima facie case of racial discrimination by establishing that blacks in the geographic area would be excluded at a higher rate than whites because of an employment practice when the evidence establishes that blacks, in fact, are not excluded at a higher rate. The question of racial discrimination can not be answered in a statistical vacuum. Whether an employer has discriminated against blacks depends on the factual context underlying the claim.
430 F.Supp. at 672.
The Eighth Circuit Court of Appeals reversed, holding that the plaintiff had made a prima facie case. Donnell v. GM Corp., 576 F.2d 1292 (8th Cir.1978). As stated above, Judge Nangle had relied on the impact of an educational requirement on actual applicants. The second test set out in Green. Relying upon Dothard v. Rawlinson, 433 U.S. 321, 97 S.Ct. 2720, 53 L.Ed.2d 786 (1977), the Eighth Circuit rejected the use by defendants of the second test. Dothard held that:
There is no requirement, however, that a statistical showing of disproportionate impact must always be based on analysis of the characteristics of actual applicants.
433 U.S. at 330, 97 S.Ct. at 2727.
Thus, by rejecting the legal standards applied by the district court, the Eighth Circuit avoided addressing the issue presented here. However, some guidance was given. Citing Townsend v. Nassau County Medical Center, 558 F.2d 117 (2d Cir. 1977). The court commented that:
We recognize that the inference arising from the general population statistics alone probably is not enough to establish a prima facie case of racial discrimination with respect to . . . educational requirements.
576 F.2d at 1297. The emphasis in Townsend was placed on the impact of a hiring practice within the employer's system:
Neither Griggs, supra, nor Johnson v. Tire & Rubber Co., 491 F.2d 1361 (5th Cir. 1974), or U. S. v. Georgia Power Co., 474 F.2d 906 (5th Cir. 1973), relied upon by appellee, support the proposition that statistical evidence concerning only the general population is sufficient to demonstrate that a job prerequisite "operates to exclude" minorities. In all these cases plaintiffs established that virtually no blacks were in fact able to satisfy the challenged job qualification and obtain employment with the defendant.
If we were to hold that a bare census statistics concerning the number of blacks in the general population who have college degrees could establish a prima facie case of discrimination, every employer with a college degree requirement would have the burden of justifying the degree requirement as job-related. (Footnote omitted)
558 F.2d at 120.
Thus, the Court concludes that plaintiff Jackson has not established a prima facie case. Although the two-year college education requirement certainly has a disparate impact upon the general population, defendant has had no problem recruiting qualified blacks. Additionally, there was no credible evidence of discrimination against plaintiff as an individual. Thus, judgment should be entered for defendants.
However, in light of the uncertainty of the legal standards as set out in Green and Donnell, the Court makes an additional finding. Defendants offered evidence concerning *882 the business necessity of the two-year college education requirement. The testimony of Police Chief Ronald E. Mason was credited by the Court. It clearly established a relationship between the sometimes hazardous duties performed without supervision or assistance by campus patrolman and the college educational requirement. Thus, the Court finds that the two-year college educational requirement is a business necessity.[2]
Judgment will be entered accordingly.
NOTES
[1] The posted job notice incorrectly stated the educational requirements as a high school education. Thus, plaintiff applied for the job. A former patrolman who is white was hired.
[2] The evidence did not support plaintiff's claim of retaliation. His gun was taken from him because it was not deemed necessary to perform his duties.