**Robert S. MEYERS, and all others similarly situated, Appellants,**

v.

**FORD MOTOR COMPANY, Appellee.**

No. 80–1049.

United States Court of Appeals, Eighth Circuit.

Submitted Nov. 10, 1980.

Decided Sept. 10, 1981.

Rehearing and Rehearing En Banc Denied Oct. 9, 1981.

Stephen N. Shulman, argued, Mark C. Ellenberg, Cadwalader, Wickersham & Taft, Washington, D. C., for appellants.

George E. Feldmiller, argued, Alvin D. Shapiro, W. Perry Brandt, Stinson, Mag & Fizzell, Kansas City, Mo., for appellee Ford Motor Co.

Before LAY, Chief Judge, HENLEY, Circuit Judge, and HANSON,* Senior District Judge.

HENLEY, Circuit Judge.

Robert S. Meyers appeals from the decision of the district court[1] granting summary judgment for Ford Motor Company. Meyers sought declaratory and injunctive relief and money damages against Ford for alleged discrimination on the basis of race in violation of 42 U.S.C. § 1981. We affirm.

Meyers, a white male, contracted with Ford in September, 1974 to operate the Ford automobile dealership in Marina del Rey, California. The agreement was a standard dealer development contract whereby Ford helps finance the purchase of the dealership. Ford and the dealer form a corporation in which Ford owns preferred stock and the dealer owns common stock. Dealership profits are used to retire the preferred stock. The contract provides that either party may terminate at will. Upon termination, the dealer receives payment for his common stock based on its value. If the stock has no value, the dealer is paid $1.00.

After two months of operating the business at a loss, Meyers concluded that the dealership could not be profitable and he exercised his right to terminate the agreement. He requested return of his original capital investment in the business. Ford denied this request and paid Meyers $1.00. Meyers concedes that this was in accord with the terms of the standard dealer development contract which he signed. He contends, however, that Ford's strict adherence to the contract terms amounted to racial discrimination in light of an allegedly more favorable settlement given the prior black owner of the Marina del Rey dealership.[2]

Meyers' immediate predecessor was A. Gordon Wright, a black man. In January, 1968 Wright signed a standard dealer development contract to operate a Ford dealership at Venice, California. In 1972 the dealership was moved from Venice to Marina del Rey. Wright was unable to operate the Marina del Rey dealership at a profit. He did not wish to leave the business, however. In July, 1974 he agreed to give up his interest in the dealership's sales operation if

---

* The Honorable William C. Hanson, United States Senior District Judge, Southern District of Iowa, sitting by designation.

1. The Honorable Howard F. Sachs, United States District Judge for the Western District of Missouri.

2. We note that although this suit was filed as a class action, the request for class certification was denied when appellant could not articulate a possible plaintiff class. Appellant has not shown that the settlement with Wright is part of any pattern or practice of favorable treatment of Ford dealers who are black.

he could remain a partner in the related leasing operation. Ford paid Wright $1.00 for his valueless stock. Wright also received a payment of $20,000.00, which was roughly equal to his initial investment in the dealership.

Both parties conceded that there were no disputed material issues of fact and moved for summary judgment. On appeal Meyers contends that the district court erred as a matter of law in granting summary judgment for Ford.

■ 42 U.S.C. § 1981[3] prohibits racial discrimination in the making and enforcement of contracts, *Johnson v. Railway Express Agency*, 421 U.S. 454, 459–60, 95 S.Ct. 1716, 1719–20, 44 L.Ed.2d 295 (1975), and protects whites as well as nonwhites, *McDonald v. Santa Fe Trail Transportation Co.*, 427 U.S. 273, 285–96, 96 S.Ct. 2574, 2581–86, 49 L.Ed.2d 493 (1976); *Carter v. Gallagher*, 452 F.2d 315, 325 (8th Cir. 1971), cert. denied, 406 U.S. 950, 92 S.Ct. 2045, 32 L.Ed.2d 338 (1972).

■ The principles on the order and allocation of proof under Title VII outlined in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), in general are also applicable to claims under § 1981. *Person v. J. S. Alberici Const. Co.*, 640 F.2d 916, 918 (8th Cir. 1981). (1) The plaintiff has the initial burden of proving a prima facie case of discrimination; (2) the burden then shifts to the defendant to articulate some legitimate, nondiscriminatory reason for his actions; (3) finally, the plaintiff has the opportunity to prove by a preponderance of the evidence that defendant's proffered reason is merely pretextual. *Texas Depart. of Community Affairs v. Burdine*, 450 U.S. 248, 101 S.Ct. 1089, 1093, 67 L.Ed.2d 207 (1981).

In the instant case the district court granted summary judgment for defendant at the close of discovery. The court concluded that, viewing the evidence in the light most favorable to Meyers and giving him the benefit of all reasonable inferences from the evidence, Ford was entitled to judgment as a matter of law. *See Robert v. Browning*, 610 F.2d 528, 531–32 (8th Cir. 1979). We believe the district court correctly held that Meyers could not prevail because (1) he failed to establish a prima facie case of racial discrimination, or, in the alternative, (2) Ford established legitimate, nondiscriminatory reasons for its actions which Meyers failed to prove were pretext.

Wright and Meyers were Ford dealers whose dealer development agreements were terminated. Both operated the Marina del Rey dealership "point" at a loss; their stock was valueless. Each was paid one dollar for his stock; Wright received an additional payment of $20,000.00. Meyers argues that intent to discriminate on the basis of race should be inferred from the differences between the settlement terms.

The district court found, however, that Wright and Meyers were not similarly situated in all relevant respects. Wright had operated the dealership for six years, the last two at Marina del Rey. He had been successful as a Ford dealer at the Venice location and believed that with the support of Ford the Marina del Rey point could be profitable. Although Ford and Wright made several attempts to shore up the business, that site was never profitable. Nevertheless, Wright did not wish to give up the sales business and agreed to do so only at the insistence of Ford. Wright negotiated with Ford to obtain a favorable termination settlement but he also maintained his relationship with Ford and the dealership through his interest in the leasing operation. Meyers, on the other hand, voluntarily terminated his dealership contract after only two months. There is no evidence that he made serious effort to right the business.

---

3. 42 U.S.C. § 1981 provides:

All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

94

 Although Wright and Meyers signed contracts with standard termination language, Wright's long-term relationship with the Marina del Rey dealership gave him a significantly better bargaining position. He had built up good will in the community and he intended to remain in the leasing business. The mere fact that Wright worked out a favorable deal in such circumstances does not show a prima facie case of race discrimination. We believe the district court correctly concluded that Meyers and Wright were not similarly situated for purposes of § 1981. *See Buckley v. Omaha*, 605 F.2d 1078 (8th Cir. 1979); *Middleton v. Remington Arms Co.*, 594 F.2d 1210 (8th Cir. 1979).

Assuming, *arguendo*, that Meyers had established a prima facie case of race discrimination, the district court found that Ford had successfully rebutted it. In so doing, the court gave appellant the benefit of all reasonable inferences from the evidence. The court noted that Ford was aware of Wright's influence with other black dealers and in the black community. There was also some evidence that the $20,000.00 may have been paid to Wright mindful of possible legal claims against Ford for violation of antitrust, dealer protection, and civil rights laws.

We believe the district court properly held that Ford had articulated legitimate nondiscriminatory reasons for its actions. *See Kenyatta v. Bookey Packing Co.*, 649 F.2d 552, at 554–555 (8th Cir. 1981); *Person v. J. S. Alberici Const. Co.*, 640 F.2d 916, 919 (8th Cir. 1981); *Buckley v. Omaha*, 605 F.2d at 1080. Ford introduced evidence showing that any difference in treatment between Meyers and Wright was motivated by economics, not race. Wright's greater bargaining power enabled him to achieve a more favorable agreement. Even settlement of possible legal claims was rational economic behavior intended to preclude the expense and publicity of litigation. The evidence thus rebutted any inference of intent to discriminate on the basis of race.

Finally, Meyers failed to carry his burden of proving that Ford's articulated reasons were mere pretext. There were economic and other factual differences which distinguished Meyers' termination from that of Wright. The evidence clearly indicated that the differences in the terms of the settlements were not motivated by racial animus.

The judgment of the district court is affirmed.