**Sammie GARNER, Appellant,**

v.

**ST. LOUIS SOUTHWESTERN RAIL-
WAY COMPANY d/b/a Cotton
Belt Railroad, Appellee.**

**No. 81–1928.**

United States Court of Appeals,
Eighth Circuit.

Submitted Feb. 10, 1982.

Decided May 10, 1982.

Spencer F. Robinson, Coleman, Gantt, Ramsay & Cox, Pine Bluff, Ark., for appellee.

Gene E. McKissic, Pine Bluff, Ark., for appellant.

Before STEPHENSON,* Senior Circuit Judge, and McMILLIAN and GIBSON, ** Circuit Judges.

STEPHENSON, Senior Circuit Judge.

Sammie L. Garner appeals the district court's [1] denial of relief on his action filed pursuant to 42 U.S.C. § 1981. The complaint alleged that appellee St. Louis Southwestern Railway Company (Cotton Belt) discriminated against Garner by wrongfully dismissing him on racial grounds from employment with the railroad. We affirm the district court's denial of relief.

FACTS

Cotton Belt employed Garner as an extra laborer and a mobile air compressor operator. In early May 1977, Garner was working on extra gang number eleven, then stationed in Jonesboro, Arkansas. While the gang worked in and near Jonesboro, Garner, along with other employees, lived in trailer houses owned by the Cotton Belt which were located on company-owned property in Jonesboro.

---

* The Honorable Roy L. Stephenson assumed senior judge status after this case was submitted.

** The Honorable John R. Gibson was United States District Judge for the Western District of Missouri at the time this case was submitted.

1. The Honorable William R. Overton, United States District Judge for the Eastern District of Arkansas.

On the evening of May 9, 1977, a person living in a residence near the company trailer park called Bill Hogan, a railroad employee in the company's Jonesboro office, to complain about noise coming from the trailer park. Hogan then called Lloyd Reddick, a Cotton Belt roadmaster who supervised the gang, at his home in Jonesboro. Hogan told Reddick about the neighbor's complaint and Reddick told Hogan to call the Jonesboro Police Department to investigate. The police went to the scene and quieted the disturbance.

On the morning of May 10, the police told Reddick that they had investigated and two women claimed to have been raped by three black employees in one of the company trailers. Reddick contacted J. L. Barnes, foreman, and asked whether he knew who had been involved in the disturbance. Barnes replied that he did not know who the persons were. Reddick made other unsuccessful inquiries to ascertain who the participants were.

Later that day, the police requested permission from Reddick for the two victims to come to the work site and attempt to identify the three men who committed the rape. Reddick consented to the line-up.

In the meantime, but prior to the line-up, Barnes told Reddick that he had heard from members of the track gang that Garner, Roosevelt Colvin, and James Cole were the three individuals involved in the incident.

Late in the afternoon of May 10, the two victims identified Garner, Colvin, and Richard Hawkins. Upon closer examination, the two victims determined that Hawkins was not the third man involved in the rape. After Garner and Colvin were identified and did not deny their guilt, the police arrested them and Reddick summarily fired

them. Two days later, the victims identified James Cole as the third man involved in the incident and while he was being arrested at the job site he was fired by Reddick.[2]

On May 13, 1977, Garner, Colvin, and Cole were charged with rape in the Craighead County Circuit Court. Garner subsequently appeared for two arraignment hearings. There were no other proceedings and the charges were *nolle prossed* on April 17, 1978, due to an "evidentiary problem."

Shortly after the criminal charge had been dismissed, Garner contacted Melvin Bristow, assistant division engineer for the Cotton Belt, concerning reinstatement. Reinstatement was denied. Garner then contacted J. W. Blasingame, Division Engineer for the Maintenance of Way Department, again seeking reinstatement. Blasingame said he would review the matter but that no one had recommended that Garner be reemployed. Ultimately, Blasingame refused to reinstate Garner.

The contract between Cotton Belt and the Maintenance of Way Union, of which Garner was a member, allowed the railroad to dismiss employees in the Maintenance of Way Department without a hearing. However, the employees could, within ten days, request a hearing and the railroad would provide in writing the reason the discipline was assessed.

Garner failed to make a timely request for a hearing. In fact, he did not make his request until after the charges were dismissed, nearly a year later.

After the railroad refused to reinstate Garner, his union filed a grievance on his behalf before the National Railroad Adjustment Board. The Board denied the grievance.[3]

2. The railroad replaced the three black workers with one white and two black males.

3. The Board, in its ruling, stated in part as follows:

The Organization argues that claimants were dismissed from service without the advantage of a hearing, which is required by Rule 6 of the controlling agreement. It especially argues this point in light of the fact

that all charges against claimants were eventually dropped in civil court.

This Board is of the opinion, however, that Carrier did not violate this rule. Under the circumstances, Carrier had ample reason to believe that claimants were involved with the two female victims. Claimants were charged with a Class A felony by civil authorities. Carrier discharged claimants based on its knowledge of the event when their arrest

On May 8, 1980, Garner, Colvin and Cole brought the present suit as a class action under 42 U.S.C. §§ 1981, 2000e(a). They also sought a declaratory judgment pursuant to 28 U.S.C. § 2201–02 and injunctions under 28 U.S.C. § 1343(a)(3)–(4). The district court removed the case from the class action docket for failure to certify a class. The court also struck the portions of the suit filed pursuant to Title VII of the 1964 Civil Rights Act for failure to first file a charge with the Equal Employment Opportunity Commission.[4]

The district court proceeded to consider the section 1981 claim but ultimately denied relief. The court found that plaintiffs had established a prima facie case of discrimination. However, the court held:

> Reddick and Barnes sincerely believed that plaintiffs were the three men involved in the disturbance and properly identified as the three against whom rape allegations were made. The plaintiffs' evidence of allegedly disparate treatment of whites charged with criminal offenses; their claims of inconsistent reasons offered for their discharges; and their allegation that "some blacks" had to be selected because white women asserted a

rape charge are not convincing. The defendant's asserted reasons for discharge are not "pretextual". Race was not a factor in the decision to discharge plaintiffs.

The plaintiffs appealed the decision. However, all except plaintiff Garner withdrew from the appeal on October 6, 1981.

ISSUES

The issues presented on appeal are as follows:

(1) whether the district court erred in concluding that Cotton Belt articulated a legitimate nondiscriminatory reason for Garner's dismissal because the company allegedly failed to clearly state this reason to Garner;

(2) whether the district court's finding that Cotton Belt established a legitimate and nondiscriminatory reason for the dismissal was clearly erroneous;

(3) whether the district court's rejection of Garner's evidence of disparate treatment was erroneous; and

(4) whether the district court's finding that Cotton Belt's asserted reason for dismissal was not pretextual was clearly erroneous.

---

took place. Claimants did not request a hearing into their discharge until after the charges were dropped by the civil authorities. Article 6–1 requires that an employee who feels unjustly treated to request a hearing within ten days from the date the discipline was administered. Claimants failed, by a considerable period of time, to meet this deadline.

The Organization argues that since claimants were cleared of all charges, they were innocent and falsely accused. This argument cannot prevail. Claimants were charged with a Class A felony. The charges were subsequently dropped by the district attorney. There could be many reasons why the authorities decided not to continue the prosecution. The failure to prosecute, however, is not necessarily an indication that claimants would not have been found guilty, if tried. It is well accepted in all arbitral forums that arbitrators, hearing officers, and referees (in the case of the Railway Adjustment Board) are not bound by decisions rendered by civil courts when discipline has been imposed under the collective bargaining agreement. Results in one forum need not be dispositive in the other forum, regardless of the outcome.

It is the opinion of the Board that carrier had justification for its actions and that it did not act in an arbitrary, capricious, or discriminatory manner. It did not violate the collective bargaining agreement by not granting claimants a hearing under Rule 6.1 of the agreement.

4. While not raised as an issue, we note that the Supreme Court has recently held that the timely filing of a discrimination charge before the Equal Employment Opportunity Commission (E.E.O.C.), as required by Title VII of the 1964 Civil Rights Act, is not a jurisdictional prerequisite to Title VII action in federal court. *Zipes v. Trans World Airlines, Inc.*, —— U.S. ——, ——–——, 102 S.Ct. 1127, 1133–1135, 71 L.Ed.2d 234 (1982).

The Court held:

> By holding compliance with the filing period to be not a jurisdictional prerequisite to filing a Title VII suit, but a requirement subject to waiver as well as tolling when equity so requires, we honor the remedial purpose of the legislation as a whole without negating the particular purpose of the filing requirement, to give prompt notice to the employer. *Id.* at ——, 102 S.Ct. at 1135.

## DISCUSSION

### A. *Legitimate and Nondiscriminatory Reason for Dismissal*

■ Because of their similarity, we combine our discussion of Garner's challenges to the district court's finding that Cotton Belt articulated a legitimate, nondiscriminatory reason for Garner's dismissal on the grounds that the finding was clearly erroneous and further that the company failed to clearly state the actual reason to Garner.

Superintendent Reddick testified and the district court found that the formal reason given for Garner's discharge was his violation of rule M801 of the agreement between the railroad and the maintenance-of-way employees. The rule states in part:

> Employees will not be retained in the service who are careless of the safety of themselves or others, indifferent to duty, insubordinate, dishonest, immoral, quarrelsome or otherwise vicious, or who conduct themselves in a manner which would subject the railroad to criticism.

Garner claims that he did not commit or participate in the rape. He testified that on the evening of May 9, 1977, he was at a local cafe. He returned to the trailer park at approximately 1:00 a. m. on May 10 to drop off a friend. He then went back to the cafe and did not return to the trailer park until approximately 3:00 a. m. He argues that it was erroneous for the court to conclude that the railroad was justified in dismissing him for involvement in the rape because he did not commit or participate in it.

In addition, Garner testified that he requested reinstatement from Bristow but Bristow told Garner he would consider reinstatement only if the charges were proved

to be "absolutely false." He also claimed he was given various reasons for his dismissal including his role in the disturbance, the rape charge and the days he missed from work.

Garner argues that the district court's conclusion that Cotton Belt's reason for his dismissal was legitimate and nondiscriminatory was erroneous because he was given differing reasons for his dismissal. While he was told that the rape charge was the reason for his dismissal, Garner also points to statements by roadmaster Reddick that appellant's conduct reflected poorly on the company. Garner also claims he was told his dismissal was due to days missed from work after his arrest, the statements of the victims, and the failure of Garner to deny the allegations made against him.

The district court found that Garner, Cole and Colvin

> caused a disturbance on company property sufficient to result in a complaint from a neighbor that required police intervention; their actions and the charges resulting from the disturbance necessitated an identification lineup of company employees on the job site; they were identified as having committed a rape on company property; and they were arrested on the work site. Such circumstances clearly form the basis for a legitimate, nondiscriminatory reason for discharging the plaintiffs.

The district court also found that any conflicting reasons that may have been given for the dismissal by Blasingame was due to his unfamiliarity with the case. The court was satisfied from the testimony of Blasingame and Reddick that Garner's participation in the disturbance was the reason for the dismissal.[5]

---

**5.** The district court stated:

> After reviewing the circumstances, the Court is satisfied that defendant did not use days missed from work as a reason supporting the discharges. The subject of days missed from work came up in a conversation between plaintiff Sammie Garner and General Superintendent, J. W. Blasingame, several months after the plaintiffs were discharged when Garner went to Blasingame's office seeking reinstatement. Blasingame was not General

Superintendent at the time of the firings and it is obvious from the text of the conversation that he was not familiar with the details of the circumstances leading up to Reddick's decision to discharge plaintiffs. It is obvious from the conversation that Blasingame was simply telling Garner that the plaintiffs' employment records with the company were such that he did not want to use his discretionary power to recommend or grant reinstatement.

The principles for allocating the burden of proof in section 1981 suits are the same as those employed in Title VII actions. *Kenyatta v. Bookey Packing Co.*, 649 F.2d 552, 554 (8th Cir. 1981); *Person v. J. S. Alberici Construction Co.*, 640 F.2d 916, 918 (8th Cir. 1981).

In *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 252–56, 101 S.Ct. 1089, 1093–95, 67 L.Ed.2d 207 (1981), the Supreme Court held that in a Title VII suit, if a plaintiff establishes a prima facie case of discrimination, the burden falls upon the defendant "to articulate some legitimate, nondiscriminatory reason for the employee's rejection." *Id.* at 253, 101 S.Ct. at 1093–94. If this burden is satisfied, the burden shifts to the plaintiff to prove the reason was pretextual. *Id.* *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 801–06, 93 S.Ct. 1817, 1823–26, 36 L.Ed.2d 668 (1973).

The district court did not err in finding that Cotton Belt's asserted reason for Garner's dismissal was legitimate and nondiscriminatory. After careful review of the record, exhibits and the district court's findings, we are satisfied this conclusion is well-founded.[6]

### B. *Disparate Treatment*

Garner submitted evidence of white employees who had been arrested but who were not dismissed by Cotton Belt. Cotton Belt argued that these cases were distinguishable from Garner for two reasons. First, none of these individuals were in the same union as Garner and the procedures to dismiss such employees under their respective collective bargaining agreements were different from the railroad's power to dismiss members of Garner's union. Second, the incidents either did not involve crimes on company property or tarnish the public image of the company. Cotton Belt submitted testimony that towns had expressed reluctance to allow the railroad to place its temporary trailer parks in their communi-

ties. The company was, therefore, justified in desiring to keep the parks peaceful.

The district court found:

The company has no specific written rule applicable to discipline of employees who are charged with felonies. Discipline differs from department to department depending upon the interpretation of the person who is in charge of the department. Generally, an employee is disciplined if the department head learns that an employee is charged with a crime and the crime "involves" the company or the company is significantly mentioned in publicity associated with the charge.

It is not necessary to review the details of each instance cited by plaintiffs of preferential treatment allegedly accorded white employees of defendant who were charged with felonies. The Court is convinced the circumstances surrounding each incident are not sufficiently comparable to permit any reasonable inference of disparate treatment.

After a careful review of the record, exhibits and the district court's findings, we hold the district court's conclusion was not clearly erroneous. The circumstances surrounding the other incidents were distinguishable and did not create a pattern of disparate treatment.

### C. *Pretext*

Under the *Burdine* test, even if a defendant provides a legitimate, nondiscriminatory reason for an employee's dismissal, the plaintiff can rebut this testimony by proving the reason was pretextual. *Texas Department of Community Affairs v. Burdine, supra,* 450 U.S. at 252–56, 101 S.Ct. at 1093–95; *see McDonnell Douglas Corp. v. Green, supra,* 411 U.S. at 801–06, 93 S.Ct. at 1801–26; *Kenyatta v. Bookey Packing Co., supra,* 649 F.2d at 554; *Person v. J. S. Alberici Construction Co., supra,* 640 F.2d at 918.

---

6. Although not binding on this court, we note that this finding was also made by the National Railroad Adjustment Board. *See* note 3 *supra.*

Garner argues that he satisfied this burden of proving pretext through the introduction of evidence of the company's failure to reinstate him, the failure of the company to dismiss any whites as a result of the incident, and the reliance of Cotton Belt on the statements of the victims.

The district court concluded, "defendant's asserted reasons for discharge are not 'pretextual'. Race was not a factor in the decision to discharge plaintiffs."

We note that the three persons arrested were the three dismissed. Cotton Belt had a legitimate interest in preventing disturbances in its trailer camps and in protecting the image of the company. The failure to dismiss any whites or the company's refusal to reinstate Garner was justified in light of his role in the disturbance and the company's interest in avoiding public intolerance of the trailer parks. Garner has failed to provide convincing evidence that these interests were not served or that they are not legitimate concerns of the company.

Clearly, Cotton Belt sustained its burden of producing evidence of a legitimate and nondiscriminatory reason for the dismissal. After a careful review of all the evidence and the district court's findings, we conclude Garner did not sustain his burden in proving pretext.

CONCLUSION

After a review of the entire record, we conclude that the district court properly found that race was not a factor in the decision to discharge appellant. We affirm the district court.

Affirmed.