Finley MULDREW, Appellee,

v.

ANHEUSER–BUSCH, INCORPORATED, Appellant.

No. 83–1134.

United States Court of Appeals, Eighth Circuit.

Submitted Dec. 12, 1983.

Decided Feb. 21, 1984.

Rehearing and Rehearing En Banc Denied April 23, 1984.

Nathan F. Conley, Donald L. McCullin, Wilson, Smith & McCullin, St. Louis, Mo., for appellant.

Doris G. Black, St. Louis, Mo., for appellee.

Before LAY, Chief Judge, FLOYD R. GIBSON, Senior Circuit Judge, and BRIGHT, Circuit Judge.

LAY, Chief Judge.

Finley Muldrew brought this action under Title VII of the Civil Rights Act of 1964, as amended 42 U.S.C. §§ 2000e to 2000e–17 (1976 & Supp. V 1981), and under 42 U.S.C. § 1981 (1976), alleging that his discharge by his employer, Anheuser-Busch, Incorporated, was for impermissibly discriminatory reasons. In a bifurcated trial, the jury found in favor of Muldrew on his claim under § 1981 and awarded him $125,-000; the trial court found in favor of Muldrew on his Title VII claim and awarded him reinstatement with full seniority and attorney's fees. Anheuser-Busch appeals from the judgments of the jury and trial court, 554 F.Supp. 808.

Muldrew, who is black, worked for Anheuser-Busch from 1970 to May 1979 when he was discharged, allegedly for excessive absenteeism. Muldrew brought suit against Anheuser-Busch alleging that the company had discriminated against him on the basis of his race in its decision to fire him.

*Sufficiency of the Evidence*

Anheuser-Busch contends on appeal that at trial Muldrew failed to present a prima facie case of racial discrimination. Muldrew submitted evidence that several white workers with absentee records equal to, or

worse than, his were still employed at the time of his termination. Anheuser-Busch argues that this evidence made no allowance for the bona fide medical excuses of the white workers and for the divergent periods of time over which Muldrew's evidence was collected on each worker.

■ The weighing and sifting of conflicting evidence is for the trier of fact. Muldrew presented evidence which reasonably could be interpreted as establishing unequal treatment by his employer. Viewing the evidence in the light most favorable to the jury verdict, we find that Muldrew made out a prima facie showing of discriminatory treatment by Anheuser-Busch.

After a plaintiff has made a prima facie showing of discrimination, the burden shifts to the defendant to articulate a nondiscriminatory reason for its actions. *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973). At trial, Anheuser-Busch put on evidence that plaintiff's termination was the result of a neutral application of Anheuser-Busch's absentee control policy. Anheuser-Busch argued that the policy inherently allowed significant disparities between the number of absences and tardies one employee might receive and the number another might receive before either were disciplined. Thus, Anheuser-Busch contends, the apparently unequal treatment of Muldrew is explained by the mechanics of the absentee policy itself and is not due to any subjective, discriminatory motives of plaintiff's supervisors.

■ After the defendant has articulated a nondiscriminatory reason for plaintiff's termination, the burden shifts to the plaintiff to prove by a preponderance of the evidence that the alleged reason was merely pretextual. *Id.* at 804, 93 S.Ct. at 1825. The plaintiff "may succeed in this either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Texas Department of Community Affairs v. Burdine,* 450 U.S. 248, 256, 101 S.Ct. 1089, 1095, 67 L.Ed.2d

207 (1981). In persuading the court, the plaintiff may rely solely on the evidence it presented in establishing the prima facie case or it may introduce additional evidence. *See id.* at 255 n. 10, 101 S.Ct. at 1094 n. 10.

■ Although Anheuser-Busch presented evidence to explain the apparently unequal treatment of Muldrew, this evidence was not so persuasive that we can say that the jury and court should have credited only Anheuser-Busch's version of the facts. "An appellate court may not substitute its view of the facts for that of the trier of fact unless it is in a position to hold that reasonable minds, viewing the evidence in the light most favorable to the prevailing party, could only have found otherwise than the trier of fact." *McIntyre v. Everest & Jennings, Inc.,* 575 F.2d 155, 158 (8th Cir.), *cert. denied,* 439 U.S. 864, 99 S.Ct. 187, 58 L.Ed.2d 173 (1978). Thus, while Anheuser-Busch's explanation of the apparently unequal treatment of the plaintiff may be plausible, we cannot say that the evidence was so persuasive that the triers of fact had no choice but to find for Anheuser-Busch. Therefore, because substantial evidence exists to support the judgments of the jury and court, we affirm those judgments.

*Motion for New Trial*

■ Anheuser-Busch also contends on appeal that the district court erred in denying Anheuser-Busch's motion for a new trial. To support this contention, Anheuser-Busch argues that the testimony presented by Muldrew was effectively rebutted by the testimony presented by Anheuser-Busch's witnesses; that Muldrew presented evidence irrelevant to the basic issue of his termination; and that Muldrew's counsel misstated at closing argument Anheuser-Busch's absentee policy. As we have said, the weighing of contradictory evidence is for the trier of fact. Determining the truthfulness of witnesses is properly left to those who heard and saw the original presentations of the testimony. Thus, Anheuser-Busch's argument that Muldrew's evi-

dence was less persuasive than Anheuser-Busch's evidence should have been made only to the trier of fact and not to this court.

After reviewing all of Anheuser-Busch's arguments, we find that any of the alleged admissions of irrelevant testimony or misstatements of plaintiff's counsel were inconsequential and would not constitute reversible error. We affirm the district court's denial of Anheuser-Busch's motion for a new trial.

*Damages*

Finally, Anheuser-Busch contends that the jury's award of $125,000 in damages was not supported by the evidence. Specifically, Anheuser-Busch contends that Muldrew failed to diligently seek work after his termination and that Muldrew's evidence of mental and emotional distress was an insufficient basis for the jury's award.[1]

■ An employee wrongfully discharged must use reasonable efforts to mitigate his or her damages. *Fielder v. Indianhead Truck Line, Inc.,* 670 F.2d 806, 809 (8th Cir.1982). However, the burden is on the defendant to prove failure to mitigate. *Hegler v. Board of Education,* 447 F.2d 1078, 1081 (8th Cir.1971). At trial, Muldrew presented evidence that he attempted to obtain employment after his discharge but was unable to find work until approximately a year and a half after his discharge. Given the effect of the discharge on Muldrew's work record and the employment market at the time, Muldrew's failure to find a new job for that period of time is not unreasonable. The jury heard

Muldrew's testimony as well as the efforts of Anheuser-Busch to impeach his evidence of mitigation. Substantial evidence of Muldrew's efforts to find work exists to support the jury's verdict.

■ Anheuser-Busch contends that Muldrew failed to substantiate his claims of mental anguish and emotional distress. During oral argument it was brought to this court's attention that some ambiguity exists in this circuit as to whether damages for emotional distress are available under Title VII. *Cf. Behlar v. Smith,* 719 F.2d 950, 953 (8th Cir.1983); *Fiedler v. Indianhead Truck Line, Inc.,* 670 F.2d 806, 810 n. 3 (8th Cir.1982); *Williams v. Trans World Airlines, Inc.,* 660 F.2d 1267, 1272 (8th Cir. 1981). In *Williams,* the author of this opinion made the observation that "the award of compensatory damages for humiliation or emotional suffering is an appropriate remedy for deprivation of a constitutional right." *Williams,* 660 F.2d at 1272. Although *Williams* embodied a claim under § 1981 and Title VII, our statement should have been confined to the damage claim asserted under § 1981.[2]

■ In the instant case, the jury awarded damages under § 1981. Muldrew presented evidence that as a result of his discharge he lost his car and house, he and his wife began experiencing marital problems, and he felt that his children respected him less. The computation of the damages necessary to compensate an individual for the deprivation of a constitutional right is a question of fact. An appellate court cannot

1. Anheuser-Busch calculates Muldrew's lost wages at $72,355.20; thus, $52,644.80 of the jury award is allotted, presumably, to Muldrew's claim of emotional distress and mental suffering.

2. As the Eleventh Circuit in *Walker v. Ford Motor Co.,* 684 F.2d 1355 (11th Cir.1982), has pointed out, the reason for the unavailability of compensatory damages under Title VII is threefold. First, the language of the statute offers only equitable relief, such as reinstatement, whereas compensation for humiliation and emotional suffering is a form of legal relief. Second, the legislative history indicates that the damages provision of Title VII was modeled

on a provision of the National Labor Relations Act dealing with unfair labor practices which has been interpreted not to permit an award of compensatory damages. Third, because Congress has explicitly provided for compensatory damages in other statutes addressing discrimination, *see, e.g.,* Fair Housing Laws, 42 U.S.C. §§ 3601–3631 (1976 & Supp. V 1981), it is logical to read the absence of such provision in Title VII as a conscious choice by Congress not to make those damages available in a Title VII action. *Id.* at 1363–64. Therefore, any dicta in cases of this circuit implying that damages for humiliation and emotional suffering are available under Title VII should be disregarded.

overturn a finding of fact unless the court is left with a firm and definite conviction that a mistake has been committed. *United States v. United States Gypsum Co.,* 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746 (1948). In the instant case, we conclude that the damage award of $125,000 was reasonable. We therefore affirm the judgments in favor of Muldrew. Costs are awarded to plaintiff.

FLOYD R. GIBSON, Senior Circuit Judge, dissenting.

I respectfully dissent. I have difficulty in perceiving that plaintiff has been discriminated against at all, and particularly on account of race. To recover in a Title VII action, a plaintiff must, by a preponderance of the evidence, establish a prima facie case of discrimination. Once this is accomplished, the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for its action. If the defendant carries this burden, then the plaintiff must prove, by a preponderance of the evidence, that the proffered reason is a pretext for discrimination. *Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 252–53,

101 S.Ct. 1089, 1093–94, 67 L.Ed.2d 207 (1981); *Garner v. St. Louis Southwestern Ry. Co.,* 676 F.2d 1223, 1228 (8th Cir.1982); *Meyers v. Ford Motor Co.,* 659 F.2d 91, 93 (8th Cir.1981). The principles for allocating the burden of proof in § 1981 suits are the same as those applicable in Title VII actions. *Garner,* 676 F.2d at 1228; *Meyers,* 659 F.2d at 93.

Plaintiff's record of unexcused absences, which include late arrivals and early departures, is so extreme that I do not think plaintiff made out a prima facie case of discrimination. However, in any event, the defendant tendered a legitimate, nondiscriminatory reason—excessive absenteeism—for firing the plaintiff. The plaintiff failed to prove that this reason was a pretext for discrimination, and thus failed to sustain his burden of proof, because he failed to prove that he was treated differently than similarly situated white employees. In fact, as an examination of the table below reveals, the evidence showed that there were no similarly situated white employees except for Resinger who also was fired.

Number of Unexcused Absences
(Includes Late Arrivals and Early Departures)
from Employee Records Introduced into Evidence

|       | GENO | RESINGER | FEAGER | REISING | PLAINTIFF |
|-------|------|----------|--------|---------|-----------|
| 1977  | 44 2 suspensions | 98 1 suspension | 14 | 0 | 101 1 suspension |
| 1978  | 40 reprimand | 44 1 suspension | 45 | 50 1 suspension | 114 3 suspensions |
| 1979  | 17 | 43 | 27 reprimand | 38 1 suspension | 32 fired |
| 1980  |  | 51 suspension; fired | 27 suspension | 15 1 suspension |  |

These figures fail to take medical absences into account. However, medical absences were excused and to include them in the total is an illegitimate use of statistics. There is no basis for including medical absences in the total because none of the plaintiff's absences were for medical reasons, and there was no evidence in the record that the medical absences of the other employees were pretextual. In addition, there was evidence on the record that during the time period in question, eleven white employees and only one black employee, the plaintiff, were fired for excessive absenteeism. This does not support a claim of racial discrimination.

The plaintiff's attendance record is atrocious. Employers cannot be expected to tolerate records like the plaintiff's and still stay in business. Further, courts of law should not tolerate the exploitation of civil rights legislation. As noted by the Supreme Court:

"Congress did not intend by Title VII ... to guarantee a job to every person regardless of qualifications .... What is required by Congress is the removal of artificial, arbitrary, and unnecessary barriers to employment when the barriers operate invidiously to discriminate on the basis of racial or other impermissible classification."

There are societal as well as personal interests on both sides of this equation. The broad, overriding interest, shared by employer, employee, and consumer, is efficient and trustworthy [performance] assured through fair and racially neutral employment and personnel decisions.

*McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 800–01, 93 S.Ct. 1817, 1823–24, 36 L.Ed.2d 668 (1972), *quoting, Griggs v. Duke Power Co.,* 401 U.S. 424, 429, 91 S.Ct. 849, 852, 28 L.Ed.2d 158 (1971). The plaintiff certainly was neither an efficient nor trustworthy worker; by his own action he strayed so far from that norm that he deserved to be fired. Civil rights legislation was intended to protect conscientious, moderately productive employees from race and sex discrimination; it was not intended to protect irresponsible employees from the natural consequences of their behavior. I would reverse.