**Danny SMITH, Appellee,**

v.

**MONSANTO CHEMICAL CO., Appellant.**

**No. 84–2032.**

United States Court of Appeals, Eighth Circuit.

Submitted March 12, 1985.

Decided Aug. 12, 1985.

Rehearing and Rehearing En Banc Denied Sept. 23, 1985.

---

William T. Weidle, St. Louis, Mo., for appellant.

Doris Gregory Black, St. Louis, Mo., for appellee.

Before McMILLIAN, Circuit Judge, HENLEY, Senior Circuit Judge, and FAGG, Circuit Judge.

McMILLIAN, Circuit Judge.

Monsanto Chemical Co. (Monsanto) appeals from a final judgment entered in the District Court for the Eastern District of Missouri in favor of Danny Smith in an action alleging violations of Title VII, 42 U.S.C. § 2000e–5 (1982), and 42 U.S.C. § 1981 (1982). A jury awarded Smith $150,000.00 actual damages on the § 1981 claim and the district court awarded him $21,508.00 back pay, attorneys fees, reinstatement of seniority and costs for prevailing in his Title VII action. For reversal Monsanto argues that the district court erred in denying its motions for (1) judgment n.o.v., (2) a new trial, and (3) remittitur. For the reasons discussed below, we reverse the judgment of the district court.

Smith, a black man, was hired by Monsanto in July 1978 to work in its Queeny Plant located in St. Louis, Missouri. Smith's job was to maintain the supply and equipment section of the plant attendant department, and his responsibilities included unloading and sorting laundry. On March 11, 1982, after he had finished unloading and sorting a load of laundry, Smith walked out of the plant, through the security gate and into the employee parking lot carrying three rag towels. Smith went to his car and locked the rag towels in the trunk. While walking back to the plant, Smith was approached by chief of security Keith Hacker and foreman Jack Baltzell. Hacker asked Smith what he had put into the trunk of his car. Smith responded, "some towels," and then opened the trunk, showing Hacker the three rag towels. Hacker asked Smith why he had taken the towels, to which Smith replied, "to wipe off my car." Hacker then told Smith to return the towels to the service building, which Smith did.

Shortly after the parking lot incident, Hacker and two union officials went to the laundry area where Smith was working and asked Smith what had occurred. Smith repeated in substance what he had previously told Hacker. On March 15, 1982, Smith reported to work as usual and was informed that he was suspended pending a decision on discharge. On March 16, 1982, Monsanto terminated Smith for the alleged theft of company property.

Monsanto has an established company policy requiring that employees obtain a material pass in order to take company property out of the plant.[1] Smith failed to request a material pass on March 11, 1982, to remove the three rag towels from the plant. Smith testified at trial that he was aware of the material pass rule but did not believe a pass was required to take rag towels into the parking lot. There was also testimony by two employees that they and other employees have used the rag towels for personal, non-job-related tasks in the employee parking lot without first obtaining a material pass.

After his discharge Smith filed a grievance pursuant to the union contract and the case was subsequently submitted to arbitration. On July 27, 1983, the arbitrator found that Smith had violated the material pass rule but had no intent to steal the rag towels. The arbitrator determined that Smith should be reinstated but that he should lose back wages and seniority between March 16, 1982, and July 27, 1983, for violating the material pass rule.

Prior to the arbitration proceeding, Smith had filed a complaint with the Equal Employment Opportunity Commission (EEOC) alleging that his termination was racially motivated. Following an investigation, the EEOC determined that there was no reasonable cause to believe that Smith was discharged because of his race. The EEOC did, however, provide Smith with a Notice

---

1. Violations of the material pass rule are treated as theft of company property.

of Right to Sue on August 4, 1982. Smith timely filed the present action in the district court alleging that he was discharged because of his race in violation of Title VII and § 1981. A jury returned a verdict in favor of Smith on the § 1981 claim and the district court found in favor of Smith on the Title VII claim.

Monsanto argues on appeal that the district court erred in denying its motion for judgment n.o.v. because there was insufficient evidence that Smith's discharge was racially motivated. Monsanto also argues that the district court's finding that Smith's termination was the result of racially disparate treatment in violation of Title VII is clearly erroneous. Monsanto argues that there was no evidence tending to support Smith's allegations that the punishment he received for stealing was more severe than punishment received by white employees accused of stealing.

■ We will first address Smith's § 1981 claim. After Smith had met his burden of establishing a prima facie case of discriminatory discharge,[2] Monsanto responded that its reason for discharging Smith was that all employees who had less than five years seniority were discharged for stealing, without consideration of other factors, as a company policy. Smith then attempted to show that Monsanto's proffered reason for his discharge was merely a pretext for discrimination. *See Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 252–56, 101 S.Ct. 1089, 1093–95, 67 L.Ed.2d 207 (1981); *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–04, 93 S.Ct. 1817, 1824–25, 36 L.Ed.2d 668 (1973); *Johnson v. Bunny Bread Co.*, 646 F.2d 1250, 1253 (8th Cir.1981). "Where, as here, the case has been fully tried on the merits, the adequacy of the party's showing at any particular stage of the *McDonnell Douglas*

ritual is of no consequence." *Elliot v. Group Medical & Surgical Service*, 714 F.2d 556, 564 (5th Cir.1983) (footnote omitted). "Each separate stage merges into the ultimate question of whether the plaintiff has established sufficiently a case of intentional discrimination." *Carter v. Duncan-Huggins, Ltd.*, 727 F.2d 1225, 1232 (D.C.Cir.1984); *see also United States Postal Service v. Aikens*, 460 U.S. 711, 714–15, 103 S.Ct. 1478, 1481–82, 75 L.Ed.2d 403 (1983).

■ Our inquiry in reviewing a judgment n.o.v. is the same as the district court's when it intitially considered the motion.

> [W]hen a motion for a directed verdict or for judgment notwithstanding the verdict is made, the court must assume that all of the evidence supporting the party opposing the motion is true, and must, in addition, give that party the benefit of all reasonable inferences drawn from that evidence. The case may be taken from the jury only if no rational jury could find against the moving party on the evidence so viewed.

*Dace v. ACF Industries, Inc.*, 722 F.2d 374, 376 (8th Cir.1983).

In the present discrimination case our inquiry is whether no reasonable jury could find that Monsanto discriminated against Smith on the basis of race, considering Smith's evidence and all reasonable inferences drawn therefrom to be true. "[The] jury verdict [will be] overturned 'only where the evidence points *all one way* and is susceptible of *no* reasonable inferences sustaining the position of the nonmoving party.'" *Zoll v. Eastern Allamakee Community School District*, 588 F.2d 246, 250 (8th Cir.1978) (emphasis in original), *citing Giordano v. Lee*, 434 F.2d 1227, 1231 (8th Cir.1970).

---

**2.** In order to establish a prima facie case of discriminatory discharge, a plaintiff must show that (1) he was a member of a protected class, (2) he was capable of performing the job, and (3) he was discharged from the job. *Johnson v. Bunny Bread Co.*, 646 F.2d 1250, 1253 (8th Cir. 1981).

"The principles on the order and allocation of proof under Title VII outlined in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), in general are also applicable to claims under § 1981." *Adams v. McDougal*, 695 F.2d 104, 109 (5th Cir.1983); *Meyers v. Ford Motor Co.*, 659 F.2d 91, 93 (8th Cir.1981).

■ Smith's primary contention in support of his claim of discriminatory discharge is that he was treated more harshly than similarly situated white employees. Smith argues that his punishment for stealing company property was more severe than that received by similarly situated white employees who had removed rag towels from the plant without a material pass. Smith argues that the statistical records kept by Monsanto pertaining to employees accused of stealing reveal that black employees are discharged more frequently than white employees, while white employees tend to receive more lenient treatment. Smith draws these conclusions by looking at the statistics for all employees who had been accused of stealing. Monsanto claims, however, that it terminated Smith because he had less than five years seniority at the time of the violation and that the company policy was uniformly applied to discharge all employees accused of stealing who have less than five years seniority.[3]

■ Reviewing Monsanto's employment records pertaining to employees accused of stealing requires us to conclude that no reasonable jury could find that Monsanto disciplined white employees more leniently than Smith. Since the company's inception in 1938, Monsanto accused thirty-six employees of stealing company property— twenty-eight white and eight black. Twelve of the twenty-eight white employees and six of the eight black employees had been terminated. These figures standing alone would provide sufficient evidence from which the jury could have found that Monsanto treated black employees more harshly than white employees. However, the figures of all employees accused of stealing do not provide the appropriate reference to determine whether Monsanto discriminated against black employees. Smith must establish that white employees "similarly situated in all relevant respects" received more lenient treatment than Smith. *See Texas Department of Community Affairs v. Burdine*, 450 U.S. at 258, 101 S.Ct. at 1096; *Meyer v. Ford Motor Co.*, 659 F.2d 91, 93–94 (8th Cir.1981).

In *Meyer v. Ford Motor Co.*, the plaintiff-car dealer claimed that Ford's strict adherence to a contract was the result of racial discrimination. The plaintiff attempted to establish Ford's discriminatory motive by showing that Ford gave the previous owner of the plaintiff's car dealership, a black man, a more favorable settlement when he terminated his car dealership agreement than the settlement the plaintiff received when he exercised his right to terminate the same agreement. We agreed with the district court that the previous owner and the plaintiff were not similarly situated in all relevant respects. The previous owner had operated the dealership for six years while the plaintiff had only operated the dealership for two months. The previous owner did not want to give up the dealership, but did so at the insistence of Ford; the plaintiff, on the other hand, voluntarily terminated his contract. These distinguishing non-discriminatory factors could have accounted for Ford's differing treatment of the two car dealers.

■ In the present case, Smith has worked for Monsanto for 3½ years and has not been previously accused of theft. We, therefore, must compare Smith's punishment with that received by white employees of similar status in order to determine whether no reasonable jury could find that

---

**3.** Monsanto's five year discharge policy is not a written company rule. Monsanto first specifically expressed this policy in 1980 during an arbitration proceeding which involved a black employee who had been accused of stealing food from the company cafeteria. A Monsanto personnel supervisor stated that the five year discharge policy was "a rule of thumb" that had been practiced by the company over the previous 42 years.

The wisdom of this particular policy is not an issue in this case. It is an employer's business prerogative to develop as many arbitrary, ridiculous and irrational rules as it sees fit. Our only concern is that the employer must apply its rules in an even-handed, non-discriminatory manner.

Monsanto discriminated against Smith on the basis of race.

Nine employees who had less than five years seniority and no prior violations had been accused of stealing. Of the nine, six were white and three were black. All nine of these employees, similarly situated with respect to Smith, were terminated. On the basis of the statistical evidence presented by Smith, we conclude that a reasonable jury could not have found that Monsanto discriminated against Smith on the basis of race.

■ The only other evidence of discrimination presented by Smith was the testimony of two white employees that they and other employees regularly used the rag towels for personal, non-job-related tasks outside of the plant without obtaining a material pass. This testimony would be probative on the issue of discriminatory treatment; however, Smith failed to present evidence that Monsanto knew of these violations and chose to do nothing about them except in Smith's case or that Monsanto's surveillance or scrutiny of white employees for material pass violations was different than that of black employees.

■ Because the district court sat as the trier of fact in Smith's Title VII action, we must affirm its findings unless clearly erroneous. *Anderson v. City of Bessemer*, —— U.S. ——, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518 (1985); Fed.R.Civ.P. 52(a). The district court explicitly found that similarly situated white employees were not disciplined for using rag towels and that black employees were treated more harshly for stealing than white employees. On the basis of these findings, the district court concluded that the reasons offered by Monsanto for its actions taken against Smith were merely a pretext for discrimination.

■ As previously stated in connection with our discussion of Smith's § 1981 claim, there was no evidence presented from which a reasonable person could have concluded that Monsanto discriminated against Smith. We therefore hold that the district court's finding that Smith's termination by Monsanto was motivated by racial discrimination is clearly erroneous.

■ Because we have concluded that Monsanto did not discriminate against Smith, it is unnecessary to discuss the district court's denial of Monsanto's motion for remittitur. Additionally, because Smith has not asserted any grounds entitling him to a new trial, we direct entry of judgment for Monsanto on the § 1981 action. *See* 9 C. Wright & A. Miller, Federal Practice and Procedure § 2540, at 612–21 (1971).

Accordingly, we reverse the judgment of the district court.