917 F.2d 23
 59 Fair Empl.Prac.Cas. 1632
 Unpublished Disposition
NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
Carolyn G. SIMMONS, Plaintiff-Appellant,
v.
John O. MARSH, Jr., Secretary of the Army, Defendant-Appellee.
Carolyn G. SIMMONS, Plaintiff-Appellant,
v.
John O. MARSH, Jr., Secretary of the Army, Defendant-Appellee.
 Nos. 89-2217, 89-2503.
 United States Court of Appeals, Fourth Circuit.
 Submitted Oct. 11, 1990.
Decided Oct. 29, 1990.
Rehearing Denied Dec. 3, 1990.
 
 Appeals from the United States District Court for the Eastern District of Virginia, at Alexandria. Claude M. Hilton, District Judge. (CA-89-842-A; CA-89-1119-A)
 Carolyn G. Simmons, appellant pro se.
 Robert Ernest Rigrish, United States Army, Washington, D.C., for appellees.
 E.D.Va.
 No. 89-2217 DISMISSED; No. 89-2503 AFFIRMED.
 Before WILKINS and NIEMEYER, Circuit Judges, and BUTZNER, Senior Circuit Judge.
 PER CURIAM:
 
 
 1
 Carolyn Simmons appeals the district court's summary judgment dismissal of her two employment discrimination actions based on Title VII of the Civil Rights Act of 1964, 42 U.S.C. Sec. 2000e-16. Simmons, a former GS-1020-10 illustrator in the Design and Illustration Division at the U.S. Army Institute of Heraldry, filed two equal employment opportunity complaints alleging (1) racial discrimination when she was not referred or selected for the position of a GS-1020-11 illustrator in the Creative Heraldry Division in the Institute (No. 89-2503) and (2) racially motivated harassment by her supervisor in the matters of her tardiness, her work performance, and her telephone usage (No. 89-2217). We affirm the dismissal of the promotion claim and dismiss the appeal of the harassment claim.
 
 
 2
 * In August 1983, a merit promotion announcement was made for the position of Illustrator, GS-1020-11, in the Creative Heraldry Division in the Institute of Heraldry. The basic requirements of the job were (1) a 4-year course of study in art (with an average of six hours of art per semester), (2) three years of progressive experience in various art media, or (3) any equivalent of education or experience as defined in (1) and (2).
 
 
 3
 Applicants were required to submit an SF-171 (personal qualifications statement) describing experience, training, education and awards. Minimum qualifications and ranking points would be determined on the basis of these statements. Additionally, Supplemental Experience Statements were desired so applicants could indicate how well qualified they were on the ranking factors. Finally, applicants were required to submit Supervisory Appraisals of Demonstrated Performance, which were designed to elicit ratings by supervisors on the ranking factors for the job.
 
 
 4
 Those who met the minimum qualifications were further evaluated on their job-related knowledge, skills, abilities, and personal characteristics (KSAP) in terms of the following ranking factors: (1) ability to create heraldic designs, (2) skill in the use of art media, and (3) skill in freehand and mechanical lettering (calligraphy). A personnel staffing specialist would assign KSAP numbers for each of the ranking factors on the basis of each of the required submissions in the application.
 
 
 5
 Eight people applied for the illustrator position. Four were found unqualified, and the remaining four, including Simmons, were ranked on the three preceding factors. For training and experience, based on her SF-171 and her supplemental experience statement, Simmons received 2, 3, and 3 points on a scale of 0-4 on the three ranking factors. Based on her supervisory appraisal, she received 0, 2, and 2 points. Her total average score was 7 and her final rating was 2.33. Two other applicants received final ratings of 3.0. and one received a rating of 3.66. The staffing specialist found Simmons highly qualified and the other three best qualified. Only those who were best qualified were referred to the supervisor of Creative Heraldry for selection. All three of those who were on the best qualified list were white. The staffing specialist testified without contradiction at the EEOC hearing that she did not know the race of the applicants until after she submitted the list of the best qualified.
 
 
 6
 The largest discrepancy between Simmons and the selectee, Sarah LeClerc, was on the supervisory appraisal. Both were unranked for ability to create heraldic designs because the supervisor had not had an opportunity to observe. However, the supervisor stated that LeClerc's work indicated she had the imagination and capability to design heraldic items. For skill in use of art media and for skill in freehand and mechanical lettering, Simmons was given "average/satisfactory" ratings. LeClerc was given "exceptional" ratings.
 
 
 7
 As for training and experience, LeClerc's Supplemental Experience Statement stated she had created heraldic and metal designs in previous positions. She was rated highly acceptable in this area. Simmons' Supplemental Experience Statement did not state she had created heraldic designs. Both LeClerc and Simmons indicated experience in various art media. The last criterion--skill in freehand and mechanical lettering (calligraphy)--was claimed by both candidates. LeClerc stated she had extensively used calligraphy. However, Simmons only stated she had training but did not indicate how she had used it professionally. Based on the preceding factors, the staffing specialist did not refer Simmons as one of the best qualified.
 
 
 8
 Simmons raises the following claims of racial discrimination: (1) the defendant discriminated in not making the portfolio an issue in this selection; (2) because she had been among the best qualified when she sought two previous promotions, her being rated as only highly qualified indicated the selection process was biased; (3) her supervisory performance appraisal was erroneous because her supervisor recorded the wrong period of time during which he supervised her; (4) she was more qualified because she was a GS-10 illustrator whereas LeClerc was only a GS-9, she had a B.A. in art, whereas LeClerc held no degree, and she had approximately ten more years experience in heraldic illustration than LeClerc; (5) the selecting official's charge that she was not a qualified artist was not supported by the evidence; and (6) LeClerc was given preferential treatment.
 
 II
 
 9
 To establish a prima facie case of employment discrimination under Title VII, the plaintiff must show that (1) she belongs to a racial minority, (2) she applied and was qualified for a job for which she was rejected, (3) she was rejected despite her qualifications, and (4) that job remained open for others with similar qualifications. McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973); United States v. Chesterfield County School Dist., 484 F.2d 70 (4th Cir.1973). When the position is filled at the time the plaintiff is rejected, the plaintiff must show "some evidence that race was a determining factor in the employer's decision" not to promote her. Holmes v. Bevilacqua, 794 F.2d 142, 147 (4th Cir.1986). This evidence may consist of direct evidence of discrimination or indirect evidence whose cumulative probative force supports as a reasonable probability the inference that but for her race she would have been selected. See Lovelace v. Sherwin-Williams Co., 681 F.2d 230, 242 (4th Cir.1982).
 
 
 10
 If a prima facie case is established, the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the challenged action. Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248, 253-54 (1981); McDonnell, 411 U.S. at 802. The plaintiff must then show that the reason articulated by the defendant is a mere pretext. Burdine, 450 U.S. at 256; McDonnell, 411 U.S. at 804. Not only must the plaintiff establish a prima facie case, but she retains the final burden of rebutting the nondiscriminatory reason proffered by the defendant. See Burdine, 450 U.S. at 256.
 
 
 11
 Simmons has established the first three elements of her prima facie case. However, she has failed to offer evidence to support an inference that race was a factor in defendant's decision to hire LeClerc. The staffing specialist did not know the respective races of the candidates until after she submitted the list of the best qualified to the selector. Thus, in only the supervisory appraisal could race have been a factor.
 
 
 12
 Jay Morris, Chief of the Creative Heraldry Division, supervised Simmons from December 1983 when her supervisor retired until July 1984. He testified that, based on his knowledge, Simmons did not have the ability to create heraldic designs, she had average skills in the use of art media, and she had very low skills in free hand mechanical lettering. Although she had been promoted to a GS-10, in his opinion she was barely able to do GS-7 work. Accordingly, he rated her abilities average/satisfactory. His assessment was similar to that of Simmons' supervisor and coworkers familiar with her work who submitted affadavits supporting Morris' evaluation.
 
 
 13
 Simmons offered her own criteria for what was relevant for the creative heraldry position and her own subjective assessment of her artistic capabilities. However, because it is the employer and not the candidate who defines what criteria are relevant, her own perception of her abilities is irrelevant in proving her prima facie case. Smith v. Flax, 618 F.2d 1062, 1067 (4th Cir.1980).
 
 
 14
 Assuming arguendo that Simmons has established a prima facie case, she has failed to rebut the defendant's nondiscriminatory reasons for choosing LeClerc. See Burdine, 450 U.S. at 256. Simmons' claims of superior qualifications in experience and skill were not supported by the record. LeClerc had a similar education background in art and extensive experience in the skills required for the job. She was considered one of the best artists the Institute had ever hired. Simmons also claims that the criteria were manipulated because her portfolio was not reviewed in this selection process when it had been in three previous applications for the same job. However, she had been rated best qualified in the three previous selection processes, and only those rated best qualified are interviewed with their portfolios. Furthermore, we find that the ranking factors were fairly applied in determining those who were best qualified.
 
 
 15
 In sum, appellee has given legitimate, nondiscriminatory reasons for its selection of LeClerc over Simmons. Simmons failed to show how these reasons were pretextual. Id. Accordingly, we affirm the district court's granting of summary judgment in No. 89-2503.
 
 III
 
 16
 Simmons alleges her resignation of May 21, 1984, was the result of a hostile work environment which made execution of her duties impossible (No. 89-2217). Nadine Russell became her supervisor on July 17, 1983. Between this date and December 19, 1983, Simmons claims Russell harassed her regarding tardiness, use of office telephones, and charges of poor job performance.
 
 
 17
 Simmons did not contend at any time during the administrative process that her resignation was forced or that she was constructively discharged. She did not reveal her reasons for resigning in her notice to her employer. She said nothing about constructive discharge in her affidavit she provided to an Army investigator in January 1985. When the EEOC examiner asked her at the commencement of the hearing whether she would stipulate to the promotion and harassment issues, she agreed. At no time was the theory of constructive discharge addressed even though her resignation was mentioned several times.
 
 
 18
 Following a hearing in April 1986, the EEOC examiner stated in his recommended decision that Simmons had failed to produce any evidence to show that Russell treated her any differently from other employees with regard to the use of telephones, tardiness, or performance evaluations. The Army adopted the decision, and the EEOC affirmed.
 
 IV
 
 19
 A federal employee must seek administrative review of her grievance before filing a suit for employment discrimination. See 42 U.S.C. Sec. 2000e-16(b) & (c); Zografov v. V.A. Medical Center, 779 F.2d 967, 968-69 (4th Cir.1985). If an "employer discriminates against an employee and purposely makes the employee's job conditions so intolerable that a reasonable person would feel forced to resign, the resignation is a constructive discharge--a distinct discriminatory 'act' for which there is a distinct cause of action." Young v. Nat'l Center for Health Servs. Research, 828 F.2d 235 (4th Cir.1987). A plaintiff alleging constructive discharge must prove two elements: deliberateness of the employer's action and intolerability of the working conditions. Bristow v. Daily Press, Inc., 770 F.2d 1251, 1255 (4th Cir.1985), cert. denied, 475 U.S. 1082 (1986).
 
 
 20
 Nothing in Simmons' administrative complaint indicated to the agency that she was claiming constructive discharge. Despite numerous opportunities, she did not attempt to amend her complaint or challenge the issues framed at her hearing. See De Medina v. Reinhardt, 444 F.Supp. 573, 578-79 (D.D.C.1978) (failure to amend claim during administrative process warranted dismissal for failure to exhaust). Waiving the exhaustion requirement in this case would only serve to circumvent the objectives of administrative exhaustion, namely promoting agency conciliation, developing an administrative record, and avoiding bypass of administrative remedies. See Ong v. Cleland, 642 F.2d 316, 320 (9th Cir.1981). Accordingly, we find that Simmons has not administratively exhausted her constructive discharge claim.
 
 
 21
 Simmons did, however, exhaust her claim that she was subjected to a racially hostile work environment. "Pure" hostile environment cases call for injunctive relief rather than money damages as the appropriate remedy. See Meritor Savings Bank v. Vinson, 477 U.S. 57, 77 (1986) (Marshall, J., concurring). The great weight of authority denies compensatory and punitive damages under Title VII because the statute provides only for equitable relief in the form of back pay, front pay, remedial seniority, injunctions and declaratory relief:
 
 
 22
 The court may enjoin the respondent from engaging in such unlawful employment practice, and order such affirmative actions as may be appropriate, which may include, but is not limited to, reinstatement or hiring of employees, with or without back pay ... or any other equitable relief as the court deems appropriate.
 
 
 23
 42 U.S.C. Sec. 2000e-5(g). See Mitchell v. Seaboard System R.R., 883 F.2d 451 (6th Cir.1989); Swanson v. Elmhurst Chrysler Plymouth, Inc., 882 F.2d 1235 (7th Cir.1989), cert. denied, 58 U.S.L.W. 3429 (U.S. Jan. 8, 1990) (No. 89-784); Muldrew v. Anheuser-Busch, Inc., 728 F.2d 989, 992 & n. 2 (8th Cir.1984); Shah v. Mt. Zion Hospital & Medical Center, 642 F.2d 268, 272 (9th Cir.1981); Pearson v. Western Electric Co., 542 F.2d 1150 (10th Cir.1976).
 
 
 24
 Simmons voluntarily resigned from her job and, given her documented past work performance, there is little chance she will be reinstated as an illustrator. Thus, since there is no reasonable probability that the same controversy will recur, and injunctive relief is inappropriate at this time, her harassment claims are moot.* See County of Los Angeles v. Davis, 440 U.S. 625, 631 (1979); Weinstein v. Bradford, 423 U.S. 147, 149 (1975). Accordingly, we dismiss Simmons' appeal in No. 89-2217.
 
 
 25
 We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the Court and argument would not aid the decisional process.
 
 
 26
 No. 89-2217, DISMISSED.
 
 
 27
 No. 89-2503, AFFIRMED.
 
 
 
 *
 Attorneys fees are generally awarded to the prevailing party in Title VII cases. 42 U.S.C. Sec. 2000e-5(k). However, because Simmons has represented herself throughout, these fees are not an issue