**Philip PERSON, Appellant,**

v.

**J. S. ALBERICI CONSTRUCTION COMPANY, INC., a Missouri Corporation, Appellee.**

**No. 80–1422.**

United States Court of Appeals, Eighth Circuit.

Submitted Jan. 15, 1981.

Decided Feb. 20, 1981.

---

Doris Gregory Black, argued, St. Louis, Mo., for appellant.

Samuel C. Ebling, argued, Guilfoil, Symington, Petzall & Shoemake and James E. Robertson, Millar, Schaefer & Hoffmann, St. Louis, Mo., for appellee J. S. Alberici Const. Co., Inc.

Before HEANEY, Circuit Judge, GIBSON, Senior Circuit Judge, and ARNOLD, Circuit Judge.

ARNOLD, Circuit Judge.

Philip Person appeals from the judgment of the district court[1] dismissing his claim under 42 U.S.C. § 1981. Appellant sought injunctive relief and monetary damages against the J. S. Alberici Construction Company for alleged discrimination on the basis of race. We affirm.

Person, a black male, began working for Alberici on the United States Post Office Mechanization Project as a millwright on July 11, 1974. Although he possessed considerable prior experience in carpentry work, Person had limited experience working as a millwright. Upon informing the general foreman, Ernest Richardson, of his unfamiliarity with millwright work, Person was paired with older, more experienced workers.

After Person's second week on the job, Richardson began receiving reports from the foreman of the millwright crew of which Person was a member about problems the foreman was having with Person. The foreman, Danny Barton, had received complaints from co-workers concerning Person's inability to follow instructions and refusal to accept direction from the more experienced millwrights. These continuing reports prompted Richardson to suggest to the millwright superintendent, Vernon Richardson, that Person be transferred.

Discussions subsequently were held among the superintendent, the Post Office Project Manager, Don Carlson, and the Equal Employment Opportunity (EEO) coordinator, John C. Bartnett, regarding Person's problems on the job. As a result of these discussions, Person was transferred on August 5, 1974, from the Post Office Project to a different work site. Upon reporting to work at the new site, Person was informed that a strike was imminent and that he was being laid off. Person later met with Edward Calcaterra, executive vice-president of Alberici, who offered to find a position for Person as a carpenter. Person rejected this offer and thereafter filed a grievance with the local union[2] and a complaint with the Equal Employment Opportunity Commission.

The Carpenters' Union denied Person's grievance, and he subsequently brought this action against Alberici alleging that his termination from employment was racially motivated. Alberici contends, and the district court found, that Person was discharged because he lacked the qualifications to perform work as a millwright.

Although Person does not now seek relief under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e,[3] the principles on the order and allocation of proof outlined in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), are applicable to an action brought under 42 U.S.C. § 1981. *Hudson v. International Business Machines Corp.*, 620 F.2d 351, 354 (2d Cir. 1980); *Flowers v. Crouch-Walker Corp.*, 552 F.2d 1277 (7th Cir. 1977); *Sabol v. Snyder*, 524 F.2d 1009 (10th Cir. 1975); *Long v. Ford Motor Co.*, 496 F.2d 500 (6th Cir. 1974). The proof required to establish a prima facie case of discrimination will necessarily vary in different factual situations. *McDonnell Douglas Corp. v. Green, supra*, 411 U.S. at 802 n.13, 93 S.Ct. at 1824 n.13; *Vaughn v. Westinghouse Corp.*, 620 F.2d

1. The Honorable James H. Meredith, United States District Judge for the Eastern District of Missouri.

2. Carpenters District Council of St. Louis, United Brotherhood of Carpenters and Joiners of America, AFL–CIO.

3. In a pre-trial ruling, the district court dismissed Person's Title VII cause of action on the ground that the action was not commenced within the statutory period of ninety days following receipt of notice of right to sue from the EEOC. This ruling is not contested on appeal.

655 (8th Cir. 1980), *pet'n for cert. filed*, 49 U.S.L.Week. 3136 (U.S. August 21, 1980) (No. 80–276). In order to establish a prima facie case in a discharge action, Person must show that (1) he belongs to a racial minority; (2) that he was qualified for the job that he was performing and satisfied the normal requirements in his work; (3) that he was discharged; and (4) that after his discharge the employer assigned white employees to perform the same work. *Flowers v. Crouch-Walker Corp., supra*, 552 F.2d at 1282; see *McDonnell Douglas Corp. v. Green, supra.*

■ Person unquestionably satisfies requirements (1) and (3). Additionally, evidence in the record indicates that after Person was laid off Alberici hired several whites to perform millwright work on the Post Office Project site, thereby fulfilling requirement (4). On the other hand, the assertion by Alberici that Person was unqualified for the job militates against his satisfaction of requirement (2). Person, however, does not need to disprove as a cause of his discharge a source of dissatisfaction of which he was unaware. *Flowers v. Crouch-Walker Corp., supra*, 552 F.2d at 1283. "[T]he employer's acceptance of his work without express reservation is sufficient to show that the plaintiff was performing satisfactorily for the purpose of shifting the burden of proof." *Ibid.*; see *Powell v. Syracuse University*, 580 F.2d 1150 (2d Cir. 1978). Person alleges, and the record shows, that he was not told of any work deficiencies and was unaware that the reason for his job transfer was his alleged lack of qualifications for millwright work.[4] In this context, Person has made a showing of competence and therefore established a prima facie case creating an inference that racial discrimination was a factor in his discharge.

■ Once Person established a prima facie case, the burden of producing evidence of some legitimate, nondiscriminatory reason for his discharge shifted to Alberici.

See *Furnco Construction Co. v. Waters*, 438 U.S. 567, 98 S.Ct. 2943, 57 L.Ed.2d 957 (1978); *Kirby v. Colony Furniture Co.*, 613 F.2d 696 (8th Cir. 1980). The company met this burden by presenting testimony of the project foremen and the superintendent that tended to show that Person was unable to perform adequately the duties of the job. This testimony supports the district court's finding of fact that Person's inability to do millwright work was the reason for his discharge.

■ Our inquiry does not end here, however. Person had the opportunity to show that Alberici's justification was a pretext for discrimination. *Furnco Construction Co. v. Waters, supra; Kirby v. Colony Furniture Co., supra.* His testimony concerning the treatment he received while working at the Post Office Project site did not necessarily establish any discriminatory practice. Many of the menial tasks Person performed were also performed by most of his white co-workers. Considering the fact that Person was inexperienced in millwright work, his assignment to do these kinds of jobs was not unusual. Person's testimony did reveal that there was apparently resentment on his part at taking instructions from one of the older millwrights with whom he had been paired. This attitude produced considerable friction between Person and the other worker.

■ Evidence that there were only four black millwrights or carpenters on the Post Office Project among the nearly sixty workers at the time Person was employed is relevant to the question of racially discriminatory motive. See *Osborne v. Cleland*, 620 F.2d 195 (8th Cir. 1980). Without additional evidence, however, the connection between this showing and Person's discharge is too attenuated to compel a finding of such motive. *Ibid.* The fact that the executive vice-president of Alberici offered to find Person a position as a carpenter, which paid the same salary as a millwright, fur-

---

4. Person had a conversation with Danny Barton concerning complaints that Barton had received from other workers about Person's work attitude. There was no criticism, however, of Person's actual work performance.

ther undermines the basis for a finding of pretext.

The district court's finding of no racial discrimination is supported by substantial evidence and is not clearly erroneous.

Affirmed.