606 F.Supp. 1320 (1985)
Mary LOVE, Plaintiff,
v.
SPECIAL SCHOOL DISTRICT OF ST. LOUIS COUNTY, Defendant.
No. 83-2057C(5).
United States District Court, E.D. Missouri.
April 5, 1985.
*1321 Doris G. Black, St. Louis, Mo., for plaintiff.
Friedman, Weitzman & Friedman, Arthur Friedman, Mary E. Davidson, Milton L. Schwartz, St. Louis, Mo., for defendant.

MEMORANDUM
LIMBAUGH, District Judge.

INTRODUCTION
Plaintiff, Mary Love, brought this action pursuant to 42 U.S.C. § 1981. Plaintiff alleges that defendant discriminated against her on the basis of her race. Plaintiff seeks recovery of actual damages and reasonable attorney's fees expended in this case.
This matter is before the Court for a decision on the merits following a five day bench trial.[1] After consideration of the testimony adduced at trial, the exhibits introduced into evidence, the briefs of the parties, and the applicable law, the Court hereby makes the following findings of fact and conclusions of law, as required by Rule 52 of Federal Rules of Civil Procedure.

FINDINGS OF FACT
Plaintiff, Mary Love, is a black female citizen of the United States. Plaintiff graduated from Harris-Stowe State College on December 12, 1980, with a Bachelor of Science Degree in Education. Plaintiff was certified to teach special education in the areas of behavior disorders (BD), orthopedically handicapped (OH), educable mentally retarded (EMR) in the Kindergarten through ninth grade level (K-9). The Missouri Department of Education awards life certifications to an applicant who can prove that she has completed the required course-work for certification.
Defendant, Special School District of St. Louis County, is an incorporated political subdivision of the State of Missouri. Defendant was formed to provide special education services to students attending the twenty-six local school districts in St. Louis County, Missouri.
The Special School District's administrative structure is divided into geographical areas, with a supervisor responsible for one or more local school districts. A majority of the instructional staff, including teacher assistants, work in the local school district buildings. The instructional staff's primary contact with the Special School District is through the Special School District supervisor in their local school district. Each Special School District supervisor interviews and then recommends applicants to fill the instructional staff in the supervisor's geographical area. The Board of Education in the local school district actually employs the teachers, usually acting on the supervisor's recommendation.
On January 6, 1981, plaintiff applied to defendant for a teacher's or teacher assistant's job. Plaintiff's application was referred to John Brubaker, a Special School District Supervisor for the Ritenour School District. Brubaker's area had three openings for teacher assistants at the time. Brubaker contacted plaintiff and set an appointment to meet her on January 16, 1981.
During plaintiff's interview, Brubaker found that plaintiff was not very knowledgeable about special education, even though she was certified in some special education areas. Nevertheless, Brubaker recommended plaintiff for a teacher assistant's position. Plaintiff took the job and began work on January 21, 1981.
Once plaintiff accepted the teacher assistant's position, her file was removed from the applicant file cabinet and incorporated into her personnel file. The effect of defendant's practice was to remove plaintiff's application from further consideration *1322 for a teacher's position. The evidence at trial showed that defendant's practice applied to everyone hired by defendant. If one of defendant's employees wanted to be considered for another job in the Special School District, the employee must have either sent a second application or a letter to the Personnel Office requesting that her applicant file be kept open. Although she could not explain why, plaintiff believed her application would remain open for consideration of teaching positions with defendant.
There was evidence that the Special School District's policy was circumvented in a few cases. On a few occasions, an applicant who was hired as a teacher assistant would let her supervisor know she was interested in a teaching job. If the supervisor felt the teacher assistant was qualified for a teaching position, the supervisor would interview the teacher assistant for the job if one became available.
Plaintiff's first evaluation as a teacher assistant rated her overall performance as "unsatisfactory (but improving)". Plaintiff's evaluation was reviewed by Brubaker and plaintiff's supervising teachers, Virginia Bender and Jane Gidlow. The evaluation rated several areas including: (1) understanding the exceptional child's needs, (2) working with children and carrying out activities of the child's program, (3) skills in operation of office and audiovisual equipment, and (4) flexibility in behavior management situations. In all four of the categories listed above, plaintiff was rated less than satisfactory. Furthermore, plaintiff was rated unsatisfactory in implementing an education plan in a teacher's absence. The crux of plaintiff's problem, as the supervisor and supervising teachers saw it, was plaintiff's inability to be clear and precise in her speaking and writing.
Plaintiff completed the 1980-81 school year and took a maternity leave for the first two months of the 1981-82 term. Plaintiff returned from maternity leave on November 1, 1981, and accepted an assignment as a teacher assistant at Kratz School, in the Ritenour School District. Shortly after returning to work, plaintiff asked Brubaker if any teaching positions were available. Brubaker did not remember how he answered plaintiff's question; nonetheless, the evidence showed that Ritenour School District had no vacant teaching positions at the time.
A few months later, early in 1982, plaintiff asked Brubaker what she needed to do to apply for a teaching position. Brubaker told plaintiff to file an application with the Personnel Office. Brubaker then obtained a blank application packet for plaintiff at her request.
Plaintiff claimed that she sent her application with Brubaker's recommendation to the Personnel Office sometime in early 1982. Brubaker never remembered recommending plaintiff for a teacher's position. Moreover, Brubaker asserted that he could not recommend plaintiff for a teacher's position at the time because he thought plaintiff was still lacking in basic teaching skills.
Other facts adduced at trial show that plaintiff had not filed an application in early 1982. Plaintiff did not have a copy of her application even though she had kept copies of her original application (in December, 1980) and her most recent application (October, 1982). Upon searching the applicant and personnel files, the Personnel Office of the Special School District could not find an application from plaintiff dated in early 1982. Furthermore, in August, 1982, plaintiff told Sharon Feldt, another Special School District employee, that she had not applied for a teacher's position because she had small children at home and was not ready to accept teaching responsibilities.
During the summer of 1982, John Brubaker resigned from his position at the Special School District. Barbara McEvoy was assigned as Supervisor to replace Brubaker. McEvoy had not known plaintiff before taking Brubaker's job.
The Special School District employees reported to their assigned classrooms during the last week of August, 1982, to prepare for the new school year. Gail Delaney, the teacher assigned to plaintiff's classroom at *1323 Kratz School, resigned the day the teachers and teacher assistants were to report. McEvoy, plaintiff's new supervisor, asked plaintiff to substitute as a teacher in her assigned classroom until a permanent replacement could be found. McEvoy's request was made pursuant to the Special School District's policy and to the teacher assistant's job description.
Plaintiff refused McEvoy's request, saying she just wanted to do her job as a teacher assistant. McEvoy then brought Sharon Feldt into the classroom. Feldt agreed to substitute teach until a permanent replacement could be found.
McEvoy then began a search for a permanent teacher for the Kratz School classroom. McEvoy first checked for applicant files among the teacher assistants in her supervisory area and found none. McEvoy then screened the files of the other applicants and asked three of the applicants to interview for the job.
McEvoy ultimately chose Barbara Wagner as the permanent replacement for Gail Delaney's position. Wagner had a Master's degree in teaching and another Master's degree in education. Wagner had several areas of life certification which included: (1) elementary education; (2) learning disability (K-9); (3) Kindergarten; (4) behavior disorders (K-9) and (5) reading specialist. Ms. Wagner was originally hired as a teacher assistant and had been working in that capacity since 1980. Wagner's recommendation record showed her competency ratings in all areas were high.
Wagner began teaching in 1982. Plaintiff claimed she had to train Wagner to perform the teaching duties; however, when asked in subsequent interviews for teaching positions, plaintiff never discussed any prior teaching experience she had, nor did she ever tell anyone about her training experience with Wagner. In addition, McEvoy testified that on every one of the occasions she visited Wagner's classroom, Wagner was teaching the class.
Several weeks later, plaintiff filed an application for a teaching job with the Personnel Office. The Personnel Office received plaintiff's application October 22, 1982.
Plaintiff was interviewed on January 7, 1983, for a position teaching learning disabled (LD) students. Judy Bender, a supervisor for the Special School District, interviewed plaintiff for the job. Bender stated she based her recommendation on three criteria which are: (1) oral and written communication skills; (2) interpretation of diagnostic instruments, and (3) ability to work with behavioral and learning problem students. Bender found plaintiff's writing samples contained several grammatical errors. Bender also found that not only had plaintiff not given any diagnostic tests which would be used in the teaching position, she could not tell Bender how any of the tests could be used. Bender stated that she expected a college graduate with a Special Education major to have the ability to tell how diagnostic tests could be used in a classroom situation.
Of the three candidates interviewed for the LD position, Kathleen Schnake Kroenung was selected for the job. Kroenung was promoted from teacher assistant to teacher. Kroenung had three and one-half years of teaching experience before working for the Special School District. Kroenung had also graduated from Harris-Stowe with a final grade point average of 3.412 compared to plaintiff's final grade point average of 2.766. During Kroenung's interview, Bender found Kroenung to be well versed in the Special Education area. Kroenung not only could name several diagnostic tests used in the Special Education area, she could convey to the interviewer that she knew how the tests were used and how to interpret the test results to aid in implementing a teaching plan for the student.
On January 25, 1983, Vito Maniaci (the Regional Executive Director of the Teacher's Union) filed a grievance on plaintiff's behalf. Plaintiff's grievance alleged that plaintiff failed to be promoted to a teaching position in violation of the collective bargaining agreement. On January 31, 1983, McEvoy answered plaintiff's first level *1324 grievance by explaining that she did not know of plaintiff's interest in a teaching position until late September, 1982. McEvoy then promised to consider plaintiff for any teaching position which became available in her supervisory area.
On February 2, 1983, Maniaci appealed plaintiff's grievance for a hearing on the supervisory level. Paul Dulle, an Assistant Superintendent, offered to resolve the dispute, suggesting that plaintiff be given the opportunity to interview for all teaching positions for which plaintiff held certification through August 31, 1983. Plaintiff rejected the offer and appealed to the Board of Education.
Plaintiff's hearing before the Board of Education took place on April 19, 1983. At the hearing, plaintiff also claimed the Special School District failed to pay her ten dollars per day substitute pay for the week Sharon Feldt taught at Kratz School in late August, 1982. Barbara McEvoy's reason for denying plaintiff substitute pay was that Sharon Feldt had filled in as the substitute after Gail Delaney's resignation.
In early May, 1983, Dr. Roland J. Werner, the Superintendent of Schools, wrote to plaintiff informing her of the Board's decision. Plaintiff's requests for immediate promotion and back pay were denied. Plaintiff was paid fifty dollars "in an effort to limit the degree of misunderstanding". The Board decided that plaintiff would receive written notification of all vacancies occurring between May 4, and August 31, 1983, and would be given the chance to be interviewed for all positions for which she held certification until August 31.
Doris Eldridge, the Assistant Superintendent for Personnel Services for Staff and Students, was charged with the duty of implementing the Board's decision. Eldridge notified all supervisors that plaintiff was to be interviewed for all positions in the areas of BD, OH, EMR and LD.
Plaintiff had numerous interviews during July and August, 1983. Several of the supervisors who conducted the interviews testified at trial and gave the most important criteria for choosing a teaching candidate. Those criteria are: (1) oral and written communication skills, (2) ability to implement diagnostic examinations and then use the test results to assess a student's disability, (3) ability to implement a program for the disabled student in a classroom setting, and (4) behavior management skills.
Even though their evaluations were done on different days and on separate interviews, the supervisors' testimony was consistent in that they agreed plaintiff was not qualified for any of the vacancies during 1983. Plaintiff's first deficiency was her inability to communicate clearly. Plaintiff's second deficiency was her inability to name and then describe various diagnostic tests used in special education classes. Many supervisors found that they had to prompt plaintiff into describing the types of programs she would use for a disabled student, whereas almost all of the other applicants did not have to be led. The evaluation of plaintiff's abilities by supervisor Beatrice Strong, a black woman, was no different than the evaluations done by the white supervisors.
Plaintiff has offered approximately three hundred personnel files into evidence. Most of the files represent teachers hired during the time plaintiff had no application on file with the Personnel Office. Of the few cases in which a teacher assistant was promoted without filing a letter to the Personnel Office, none of the teacher assistants promoted were white, with less qualifications than plaintiff. Of the remaining files, none of the files represents a white teacher less qualified than plaintiff, employed in the areas of BD, LD, OH or EMR.

Conclusions of Law:
This Court has jurisdiction of this case pursuant to 42 U.S.C. § 1981 and 28 U.S.C. § 1343.
Although plaintiff does not seek relief under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., the principles on the order and allocation of proof outlined in McDonnell Douglas *1325 Corp. v. Green, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973) and Texas Department of Community Affairs v. Burdine, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981), are applicable to an action brought under 42 U.S.C. § 1981. Person v. J.S. Alberici Const. Co., Inc., 640 F.2d 916, 918 (8th Cir.1981). Plaintiff's ultimate burden of proof in a § 1981 case is that she must show defendant intentionally discriminated against her because of her race. General Building Contractors Association v. Pennsylvania, 458 U.S. 375, 102 S.Ct. 3141, 73 L.Ed.2d 835 (1982).
In order to establish a prima facie case in a failure to promote action, plaintiff must show that (1) she belongs to a racial minority; (2) she applied and was qualified for the job she was seeking; (3) she was not promoted; (4) the employer hired white employees to perform the same position. See McDonnell Douglas Corp. v. Green, supra and Texas Department of Community Affairs v. Burdine, supra.
Plaintiff satisfies requirements (1), (3) and (4). One obstacle plaintiff must overcome in meeting the second requirement is that she did not file a second application in the Personnel Office of the Special School District until October, 1982. It is clear that plaintiff's failure to file a second application is fatal to her claim as it concerns the time period from Jannuary, 1981 until October, 1982. Cf. Wright v. Stone Container Corp., 524 F.2d 1058, 1063 (8th Cir.1975). Plaintiff's initial employment application was made part of her personnel file as was the practice with all employees of the Special School District. Plaintiff's failure to file a second application precluded her from remaining in the applicant file for teaching positions.
Nevertheless, plaintiff has made a prima facie case in that she sent her second application to the Personnel Office in October, 1982. Defendant also admitted that some teacher assistants were promoted even though they had not kept their applicant files active by writing the Personnel Office. The promotions without reapplication occurred when the teacher assistant would tell her supervisor of her interest in a teaching position for which she was qualified.
Once plaintiff has made a prima facie case, defendant has the burden to articulate a nondiscriminatory reason for not promoting plaintiff. McDonnell Douglas Corp. v. Green, supra; Texas Department of Community Affairs v. Burdine, supra. Defendant has met the burden by showing that plaintiff was not deemed as qualified as the applicants promoted ahead of her. In addition, the whites promoted without reapplying to the Personnel Office of the Special School District were deemed more qualified than plaintiff for the teaching positions they assumed.
Defendant presented the criteria by which applicants for a teaching job were judged. The criteria the interviewers used stressed the applicants' ability to communicate effectively and to utilize diagnostic tests to help implement a teaching plan. Different interviewers at different times consistently rated plaintiff in the lower echelon of prospective teachers.
Once defendant has stated its reason for not promoting plaintiff, plaintiff must show by a preponderance of the evidence that defendant's reason was merely a pretext for discrimination. Plaintiff has not shown that defendant's stated reasons for not hiring plaintiff was pretextual. This Court cannot find that the interviewers' evaluations of plaintiff's abilities were in error. Section 1981 is designed to prevent intentional discrimination; plaintiff has failed to prove defendant discriminated against her. The Court hereby finds for the defendant and judgment will be entered in its favor.
NOTES
[1] Plaintiff waived her right to a jury trial in a memorandum filed in this Court on March 21, 1984.