IT IS FURTHER ORDERED that defendants' motion for summary judgment is DENIED.

IT IS FINALLY ORDERED that the parties meet and confer within thirty (30) days of this order for the purpose of attempting to reach a settlement as to damages and/or other relief warranted in light of this finding of liability.

**Joseph DONNELL, Plaintiff,**

v.

**GENERAL MOTORS CORP., et al., Defendants.**

No. 84–3002C(6).

United States District Court, E.D. Missouri, E.D.

July 28, 1987.

Steven Akre, Coburn, Croft & Putzell, St. Louis, Mo., for plaintiff.

James E. McDaniel, Lashly, Baer & Hamel, Morris Levin, Levin and Weinhaus, St. Louis, Mo., for defendants.

## MEMORANDUM OPINION

GUNN, District Judge.

This action brought under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*, was tried to the Court sitting without a jury. The Court, having considered the pleadings, the testimony and evidence presented by the parties at trial, and the applicable law, now enters judgment for defendants and makes the following findings of fact and conclusions of law as required by Rule 52, Fed.R.Civ.Pro.

## FINDINGS OF FACT

Most of the facts are not in dispute. The following findings of fact are intended to resolve any differences, based on the credible evidence presented at trial:

1. Plaintiff is a black male, first employed by defendant General Motors Corporation (GM) in 1966 at its Shell plant in St. Louis where he worked into 1970. In 1970, plaintiff commenced working at GM's St. Louis Chevrolet Motor Division plant.

2. During all times pertaining to the matters which are the subject of this lawsuit, plaintiff was a member of defendant United Automobile, Aerospace and Agricultural Implement Workers of America, Local 25 (U.A.W.). Local 25 of the U.A.W. specifically represents plaintiff and other workers in the production and maintenance unit employed at GM's Chevrolet Motor Division plant in St. Louis as collective bargaining representative.

3. GM is an employer within the meaning of 42 U.S.C. § 2000e(b), and U.A.W. is a labor organization within the meaning of 42 U.S.C. § 2000e(b) and (e). All parties were bound by the terms of the collective bargaining agreements negotiated between GM and the U.A.W.

4. On April 29, 1971 plaintiff filed a charge of discrimination against GM with the Equal Employment Opportunity Commission (EEOC), alleging employment discrimination in its apprenticeship program. This was followed by two additional charges with the EEOC against GM and U.A.W. In each case the EEOC issued a right-to-sue letter. Plaintiff then filed a complaint with the United States District Court, Eastern District of Missouri, alleging employment discrimination against GM and discrimination by U.A.W. in its representation of him.

5. Judgment in the District Court action was in favor of defendants, *Donnell v. General Motors Corp.*, 430 F.Supp. 668 (E.D.Mo.1977), but on appeal the judgment was reversed and remanded. *Donnell v. General Motors Corp.*, 576 F.2d 1292 (8th Cir.1978). On remand, plaintiff was denied relief against defendants GM and U.A.W. *Donnell v. General Motors Corp.*, 500 F.Supp. 176 (E.D.Mo.1980), *aff'd*, 676 F.2d 705 (8th Cir.1981), *cert. denied*, 459 U.S. 844, 103 S.Ct. 97, 74 L.Ed.2d 88 (1982).

6. During the pendency of the above litigation, on July 1, 1977, plaintiff filed further charges of discrimination against GM on the basis that he was denied light duty work in retaliation for his filing prior charges of discrimination. The EEOC issued a right-to-sue letter on those charges, but plaintiff did not bring suit in District Court.

7. On June 19, 1984, plaintiff again filed charges with the EEOC alleging discriminatory denial of light duty work. The EEOC issued a right-to-sue letter and plaintiff filed the instant action on December 31, 1984.

8. Paragraph 72 of the National Agreement between GM and U.A.W. governs situations in which an employee is unable to perform his regular duties because of on-the-job injuries and seeks to do other work:

> Any employee who has been incapacitated at his regular work by injury ... while employed by the Corporation, will be employed in other work on a job that is operating in the plant which he can do without regard to any seniority provisions of this Agreement, except that such employee may not displace an employee with longer seniority, provided, however, that by written agreement between Local Management and the Shop Committee, any such employee may be placed or retained on a job he can do without regard to seniority rules.

9. During 1972 and 1973 plaintiff's union committeeman, William Huff, filed grievances at plaintiff's behest alleging Paragraph 72 violations by GM in failing to provide light work assignments by reason of plaintiff's disabilities. The grievance procedures followed by Huff for plaintiff were in accordance with the collective bargaining agreement.

10. In 1972, during the course of processing plaintiff's Paragraph 72 grievances, Huff accompanied plaintiff throughout the GM assembly plant and indicated to him each of the various jobs and their requirements. Plaintiff was asked whether he could perform any of the work assignments, but he rejected each without any attempt at performance.

11. Plaintiff was then assigned the most unexacting job in the plant—sweeping with a broom. Plaintiff worked at the sweeping job for about 15 to 20 minutes, then left the plant without explanation to anyone. Plaintiff thereafter did not return to work for several weeks.

12. From 1973 to 1977, plaintiff did no work for GM except for eighty-five hours in 1973 and three hours in 1974. In 1977, plaintiff performed in a variety of jobs for GM. Acknowledging that it was easy to do, plaintiff next worked primarily at putting grease on car doors on the assembly line. His working time in 1977 was 1700 hours. This continued until a board fell off a shelf and struck him on the neck and shoulders. Plaintiff again claimed time off for injury. When he returned he refused to work, asserting that he was afraid that another board might fall on him. In January 1978, plaintiff was again assigned light duty work, including a job which required him only to sit and observe as an inspector. He left the plant after being given the inspector's work and did not return to work again.

Since January 1978 plaintiff has not sought or received any light duty work, and he has not returned to work.

13. Plaintiff has been unable to identify any employee performing any light duty job who has less seniority than he.

14. U.A.W. representatives have fully and to the best of their ability processed each grievance filed by plaintiff.

*Workers' Compensation and Disability Pension Claims*

15. On January 27, 1972, plaintiff contended that he was injured on the job at GM, and on June 2, 1972, he filed a workers' compensation claim. GM disputed the claim, asserting that the injuries were not work-related but were the result of previous non-work accidents. The U.A.W. was not a party to the workers' compensation proceedings.

16. Over ten years later, on November 24, 1982, the Missouri Administrative Law Judge issued an award which plaintiff appealed to the Missouri Labor and Industrial

Relations Commission. The award was affirmed by the Commission. Plaintiff appealed, first to the Missouri Circuit Court, then to the Missouri Court of Appeals, both of which affirmed the award. The final decision was rendered on March 19, 1985 without opinion.

17. Plaintiff contends that he was denied his disability pension because of race and in retaliation for his prior charges of unlawful discrimination.

18. Plaintiff's evidence as to whether or not he was permanently disabled was not substantial. Though he did present a letter from a chiropractor stating that plaintiff had a total disability, plaintiff's characterization of the information in the letter was that it "was true and not true."

19. Eligibility for total and permanent disability benefits is determined by the collective bargaining agreements between GM and the U.A.W. The Agreement covering pensions provides in pertinent part:

> An employee who is totally and permanently disabled prior to attaining age sixty-five, and has at least ten years of credited service, shall be eligible for a disability pension as hereinafter provided.

Supplemental Agreement Covering Pension Plan, Exhibit A to the Agreement between General Motors Corporation and U.A.W., Article II, Section 4(a).

20. The Agreement further provides that:

> An employee shall be deemed to be totally and permanently disabled only if he is not engaged in regular employment or occupation for remuneration or profit and on the basis of *medical evidence satisfactory to the corporation* the employee is found to be wholly and permanently prevented from engaging in regular employment or occupation with the corporation.... (Emphasis supplied.)

*Id.* at Article II, Section 4(b).

21. Under the Agreement,

> credited service ... shall be computed for each calendar year for each employee on the basis of total hours compensated.... Any calendar year in which the employee has 1,700 or more compensated hours shall be counted a full calendar year. Where the employee's total hours compensated during a calendar year are less than 1,700 hours, a proportionate credit shall be given to the nearest ¹⁄₁₀ of a year.

> \* \* \* \* \* \*

> An employee with seniority who is absent from work during any calendar year after 1970 ... while on Corporation approved sick leave, shall be credited with 40 hours for each complete calendar week of such absence during such year in addition to any other hours credited *provided* that such employee shall have received pay from the corporation during that year for at least 170 hours....

*Id.* at Section 2(a) and (b)(1).

22. At the time of plaintiff's 1972 injury, he had 5.5 years of credited service. In 1973, plaintiff was paid by GM for a total of 85 hours of work. In 1974, plaintiff was paid for a total of 3 hours. In 1975 and 1976 plaintiff had no paid hours of work. In 1977, plaintiff was paid for 1,720 hours of work. As a result of these records, by the end of 1977, plaintiff had only 6.5 years of credited service. Plaintiff has not worked for GM at any time since January 1978.

23. In March 1978, plaintiff made a special request to GM for credited service for the years 1973 through 1976. This request was denied by GM due to the fact that plaintiff was on sick leave from 1973 through 1976 and had not been paid for 170 hours of work during any of those years.

24. On April 17, 1984 plaintiff for the first time made an application to GM for total and permanent disability benefits. GM denied this request, contending that plaintiff did not meet the contractual conditions of having ten years of credited service and lacked proof by medical evidence satisfactory to it that he was totally and permanently disabled. On April 18, 1984, plaintiff again filed a request for credited service. Plaintiff was told by GM that his credited service for the period 1973 through 1976 could not be restored under the contract until his workers' compensa-

tion case concerning his 1972 injury was settled.

25. GM does not consider a workers' compensation case to have finality until all appeals have been adjudicated. When plaintiff's workers' compensation case was settled, finally establishing that plaintiff's 1972 injuries were work related, plaintiff was granted service for each year he was off from 1973 through 1976.

26. On March 19, 1985, plaintiff's workers' compensation case, filed in 1972, was concluded when the Missouri Court of Appeals affirmed the decision of the Circuit Court. At that time, GM denied plaintiff's claim for total and permanent disability because, although plaintiff now met the requirement for ten years of credited service, plaintiff did not show GM satisfactory medical evidence that plaintiff was permanently and totally disabled.

27. In accordance with the procedures set out in the labor contract, the U.A.W. as plaintiff's representative appealed that denial and agreed with GM that St. Louis Medical Clinic would be the neutral medical authority to render an opinion whether plaintiff was totally and permanently disabled. Acting on the appeal filed by the Union, the St. Louis Medical Clinic, Inc., on September 16, 1985 determined that plaintiff was totally and permanently disabled. GM and the Union accepted this neutral determination.

28. On February 15, 1986 plaintiff received the sum of $4,649.84, which reflected the amount owed to plaintiff on his pension computed retroactively from the date of his first application for total and permanent disability benefits filed in April 1984 until the date of payment. Plaintiff has received a pension payment from GM every month since February 15, 1986.

## CONCLUSIONS OF LAW

A. *The Allegations that Plaintiff was Denied Light Duty Work in Violation of Title VII and 42 U.S.C. § 1981 are Barred by the Statute of Limitations.*

1. Under Title VII an alleged discriminatory act which is not made the basis of a timely charge of discrimination is the legal equivalent of a discriminatory act that occurred before Title VII was passed. *United Airlines, Inc. v. Evans*, 431 U.S. 553, 558, 97 S.Ct. 1885, 1889, 52 L.Ed.2d 571 (1977). The statute of limitations is jurisdictional. *Harris v. Norfolk & Western Railway*, 616 F.2d 377, 379 (8th Cir. 1980). Consequently, if the plaintiff failed to file a charge of an unlawful employment practice within 90 days after the unlawful act occurred or failed to file suit within 180 days of receipt of notice of right to sue, the claim should be dismissed. *Evans*, 431 U.S. at 558, 97 S.Ct. at 1889. The statute of limitations begins running when the alleged discriminatory act occurred. Mere continuity of employment is insufficient to extend the life of a cause of action for employment discrimination or toll the statute. *Delaware State College v. Ricks*, 449 U.S. 250, 257, 101 S.Ct. 498, 503, 66 L.Ed.2d 431 (1980). The allegation that a present act gives effect to past illegal discrimination does not state a cause of action. *Id.* at 258, 101 S.Ct. at 504.

2. The statute of limitations to be applied under 42 U.S.C. § 1981 is the one most appropriate as provided by state law. *Johnson v. Railway Exchange Agency*, 421 U.S. 454, 462, 95 S.Ct. 1716, 1721, 44 L.Ed.2d 295 (1975). *Drake v. Southwestern Bell Telephone Co.*, 553 F.2d 1185 (8th Cir.1977) holds that the five year statute of limitations provided in § 516.120, RSMo is the appropriate statute of limitations to apply to claims asserted under 42 U.S.C. § 1981. *Id.* at 1188. *See also Goodman v. Lukens Steel Co.*, —— U.S. ——, 107 S.Ct. 2617, 96 L.Ed.2d 572 (1987).

3. Plaintiff filed his charge of discrimination with the EEOC on June 19, 1984 alleging, in part, that he was denied light duty work because of his race and in retaliation for filing his previous lawsuit and earlier charges of discrimination. Plaintiff filed the present lawsuit on December 31, 1984.

4. Plaintiff last performed work for GM in January 1978. At that time he filed his grievance complaining of violation of Para-

graph 72 because of the alleged failure of GM to give him light duty work. At that time plaintiff had in fact been provided light duty work, albeit he contended that he was unable to perform. Plaintiff has never since that time requested light duty work or any other type of work at GM. Consequently, plaintiff's allegation that he was denied light duty work, an act that occurred at the latest 6 years and 11 months before this suit was filed, is barred by limitations under both Title VII and the limitations applicable to claims under 42 U.S.C. § 1981.

### B. Plaintiff Failed to Prove A Prima Facie Case of Race Discrimination or Retaliation.

5. In suits brought under Title VII and § 1981, the order and allocation of proof are the same. *Person v. J.S. Alberici Construction Co.*, 640 F.2d 916, 918 (8th Cir. 1981).

6. The plaintiff has the initial burden of establishing a prima facie case of racial discrimination. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973). To establish a prima facie case of disparate treatment, the employee must show that his failure to be hired, transferred, or promoted or other alleged discriminatory actions of the employer were more likely than not based on considerations of impermissible factors. *Coe v. Yellow Freight Systems, Inc.*, 646 F.2d 444, 449 (10th Cir.1981).

7. When the employee has established his prima facie case, the employer can rebut the presumption of discrimination by articulating legitimate non-discriminatory reasons for failure to provide the employee with a position, treatment or benefit he alleges was discriminatorily denied. *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 253, 101 S.Ct. 1089, 1093, 67 L.Ed.2d 207 (1981); *Person*, 640 F.2d at 919 (8th Cir.1981). After the employer meets the burden of articulating non-discriminatory reasons for its actions, the burden shifts to the employee of providing that the reasons offered by the employer were a mere pretext for discrimina-

tion. *Burdine*, 450 U.S. at 253, 101 S.Ct. at 1093; *Person*, 640 F.2d at 919.

8. To make the prima facie case of discriminatory denial of light duty work, plaintiff must first establish that he was contractually entitled to such work and that the denial was due to racial or retaliatory motives. Plaintiff failed to prove that he was entitled to light duty work under Paragraph 72 of the National Agreement between GM and U.A.W. because he failed to identify any employee with less seniority than he who was performing light duty work.

9. Plaintiff also failed to prove he was actually denied light duty work. He was, in fact, given a job of sweeping—identified as among the lightest jobs in the plant—in 1972, a job putting grease on door hinges in 1977, and was again given light duty work as late as January 1978. Plaintiff's claim that he was denied light duty work because of his race or in retaliation for earlier charges or litigation is without foundation.

10. To make his prima facie case of denial of his permanent and total disability pension, plaintiff must first show that he was entitled to a total and permanent disability pension when he made his application of April 17, 1984. Plaintiff must then prove that denial of this request was based upon his race or in retaliation.

11. Plaintiff was not contractually entitled to receive his total and permanent disability pension when he first applied for it. Plaintiff's application for total and permanent disability was denied by GM because of the company's claim that at the time he did not meet the contractual requirements of ten years of credited service and had not shown by credible medical evidence that he was totally and permanently disabled. The denial was not because of plaintiff's race or in retaliation.

12. GM also articulated non-discriminatory reasons for its actions. GM contested plaintiff's claim for workers' compensation arising from his January 27, 1972 injury because it claimed in good faith that plaintiff had earlier suffered injuries not occu-

pationally related to the same parts of his body as were allegedly injured on January 27, 1972. Consequently, GM contested plaintiff's request for credited service, because he was on sick leave for nearly all of 1973 through 1976 as a result of what GM contended to be a non-job related injury. Under the pension plan, when an employee is on sick leave for a non-job related injury and is not paid for 170 hours worked in a particular year, that employee is not entitled to credited service. At the time that plaintiff made his special request for credited service, he did not meet the contractual requirements that made him eligible to receive credited service for those years.

13. In addition, the consistent practice of GM is not to process a worker's pension claim until any pending unresolved workers' compensation award is final if eligibility for the pension is dependent on the outcome of such an award. GM did not appeal the decision in plaintiff's workers' compensation case. The finality of the workers' compensation award for the period 1982 through 1985 was delayed because of appeals filed by plaintiff. After the decision of the Missouri Court of Appeals finalized plaintiff's 1982 workers' compensation award, which determined that plaintiff's injury was occupationally related, GM awarded plaintiff credited service for the years 1973 through 1976. Ultimately, when it was determined by competent medical evidence that plaintiff was permanently and totally disabled, GM retroactively paid plaintiff's pension for permanent and total disability and has continued to make the requisite monthly pension benefits. Plaintiff introduced no evidence of pretext by defendants in any of their actions.

14. The Court finds that plaintiff's claims of denial of light duty work are barred by Title VII and § 1981 statutes of limitations. Alternatively, plaintiff has failed to prove that the denial of light duty work was a result of racial discrimination or in retaliation.

15. The Court further finds that plaintiff was not denied his pension as a result of racial discrimination or in retaliation and that he is in fact receiving the pension benefits to which he is entitled. Plaintiff has received his entire pension benefits retroactively and therefore has suffered no damage.

■ 16. A breach of the statutory duty of fair representation occurs only when a union's conduct toward a member of the collective bargaining unit is arbitrary, discriminatory, or in bad faith. *Vaca v. Sipes*, 386 U.S. 171, 190, 87 S.Ct. 903, 916, 17 L.Ed.2d 842 (1967). Plaintiff did not prove that any of the conduct of U.A.W. in its representation of him was arbitrary, discriminatory or in bad faith. Instead, plaintiff testified as to the satisfactory relationship he had with his committeeman. Each of plaintiff's grievances of denial of light work was accepted and processed by U.A.W. officials under contract procedures. The appropriate U.A.W. officials were diligent in seeking to obtain light duty work for plaintiff, and did, in fact, obtain such work for him.

■ 17. A wide range of reasonableness must be allowed the bargaining representative in serving the unit it represents, subject always to complete good faith and honesty of purpose in the exercise of its discretion. *Ford Motor Co. v. Huffman*, 345 U.S. 330, 338, 73 S.Ct. 681, 686, 97 L.Ed. 1048. Even poor judgment or ineptitude are insufficient to establish a breach of the duty of fair representation. *NLRB v. American Postal Workers Union*, 618 F.2d 1249, 1255 (8th Cir.1980). Plaintiff did not prove any lack of good faith or honesty of purpose by U.A.W. officers in their handling of any of plaintiff's grievances. On the contrary, the appeal filed by U.A.W. on plaintiff's behalf seeking a medical evaluation that plaintiff had a total and permanent disability resulted in a ruling favorable to plaintiff which enabled him to qualify for the total and permanent disability pension that he now receives.

Judgment for defendants.