697 F.Supp. 1081 (1988)
Otis McNICHOLS, Plaintiff,
v.
McDONNELL DOUGLAS CORPORATION, Defendant.
No. 85-1081-C (4).
United States District Court, E.D. Missouri, E.D.
July 12, 1988.
*1082 Doris Gregory Black, St. Louis, Mo., for plaintiff.
Dennis C. Donnelly, Bryan, Cave, McPheeters and McRoberts, St. Louis, Mo., for defendant.

MEMORANDUM AND ORDER
CAHILL, District Judge.
This matter comes before the Court on defendant's motion for a directed verdict at the close of plaintiff's case.
Plaintiff, Otis McNichols, brings this action pursuant to 42 U.S.C. § 1981 seeking damages from his former employer, defendant McDonnell Douglas Corporation. Plaintiff alleges that he was discharged because of his race, while the defendant company denies the racial allegations and asserts that plaintiff's aggressive conduct, especially the possessing of a handgun on company premises, was the principal reason for plaintiff's firing.
Before trial, the Court conducted an extended evidentiary hearing on defendant's motion to dismiss based on the ground that the plaintiff's possession of a loaded revolver on company premises was more than ample ground for summary discharge of the plaintiff. After hearing the parties, the Court denied the defendant's motion to dismiss and permitted plaintiff to proceed to trial.
Thereafter, this cause came to trial before a jury on February 2, 1988. At the close of plaintiff's case, defendant moved for a directed verdict and the Court sustained the defendant's motion and discharged the jury because the Court did not believe that a reasonable jury, after hearing the evidence, could return a verdict finding that the company had discriminated against plaintiff because he was black. See Richard Short Oil Co., Inc. v. Texaco, Inc., 799 F.2d 415, 419 (8th Cir.1986); Admiral Theatre Corp., et al. v. Douglas Theatre Corp., et al., 585 F.2d 877, 883 (8th Cir.1978); Rule 50(a), Fed.R.Civ.P.
Title 42 U.S.C. § 1981 states as follows:
All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.
The principles concerning the order and the allocation of proof outlined in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), are applicable to an action brought pursuant to 42 U.S.C. § 1981. See Person v. J.S. Alberici Construction Company, Inc., 640 F.2d 916, 918 (8th Cir.1981).
In order to establish a prima facie case in an allegedly racially motivated discharge action, the plaintiff must show that (1) he belongs to a racial minority; (2) that he was qualified for the job that he was performing and satisfied the normal requirement for the job, (3) that he was discharged; and (4) that after the discharge the employer assigned white employees to perform the same work. See generally, Texas Department of Community Affairs v. Burdine, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981); McDonnell Douglas, *1083 411 U.S. at 802, 93 S.Ct. at 1824; Person at 919. However, the presentation of a prima facie case does not mean that plaintiff can necessarily withstand a motion for a directed verdict. See Jett v. Dallas Independent School District, et al., 798 F.2d 748, 757 (5th Cir.1986).
In the case at bar, there is no dispute as to the fact that plaintiff satisfies prongs (1) and (3) of the requirements in that he is black and he was discharged by defendant.
At the trial, the testimony of plaintiff's witnesses revealed that plaintiff was discharged after a series of incidents occurring on the premises of McDonnell Douglas Corporation as follows: On February 9, 1985, security officers of the McDonnell Douglas Security Department testified that they received a radio call regarding an assault occurring at Gate # 2, Building # 2. Upon arrival, the security officers took a report regarding an altercation that had occurred between two employees. The alleged assault victim, Bruce Jones, was taken to Christian Hospital Northeast where he was treated for bruises on the head, right hip, right knee, and right hand. Jones recounted his version of the events to the security officers, alleging that he and the plaintiff, Otis McNichols, were involved in a verbal dispute. Jones told them that McNichols thereafter went to his truck, retrieved a metal pipe, and proceeded to chase him across the parking lot. McNichols was swinging the iron pipe and hit Jones about the neck and shoulder area. Jones reported that McNichols returned to his truck, started it, and proceeded to try to run him down but Jones somehow managed to reach a telephone to call McDonnell Douglas Security and to report these events. Security personnel responded by stopping McNichols and taking him into custody. The security guard testified that a search of the vehicle revealed a three-foot long metal pipe, a 22 caliber pistol, several cartridges in a trash can in the car, and a bottle of prescription medication. McNichols was transferred to the custody of the St. Louis County Police Department where he was initially charged with carrying a concealed weapon, possession of a controlled substance, and assault first degree. But each of these charges was subsequently dismissed in the courts of St. Louis County. It is unclear why all the charges were dropped; but as to the assault, Bruce Jones failed and/or refused to prosecute. Apparently the drugs were plaintiff's medical prescriptions.
At trial, plaintiff admitted having an argument with Mr. Jones but denied hitting him in any form. Plaintiff also testified that on the day in question, prior to his argument with Jones, he stepped out of his vehicle and spotted a shiny object on the roadside. He picked it up and discovered it to be a fully loaded revolver which he laid on the seat of his vehicle, intending to give it to the McDonnell security guards at an entrance gate. However, before he could deliver the weapon he was stopped by McDonnell security forces.
As an explanation, the plaintiff also testified that many McDonnell vehicles carried iron pipes which were used for leverage in moving heavy boxes, etc. Plaintiff asserted that he had selected the particular vehicle he was driving at the time at random and had not noticed the iron pipe or the bullets in the car. The plaintiff repeated his assertion of finding the gun, but offered no explanation as to why there were extra bullets in a trash can in the car which matched the calibre of the gun he claimed to have just found.
Other testimony adduced during plaintiff's case revealed that after the incident occurred, both Mr. Jones and the plaintiff, Mr. McNichols, were placed on suspension pending further investigation and that upon completion of the investigation, Mr. Jones, who was white, received a two-week disciplinary suspension while Mr. McNichols was discharged.
Plaintiff also presented testimony that other employees who were members of gun clubs carried rifles and other long weapons in their vehicles while at work, but there was no evidence shown that any other employee carried or possessed a handgun on the inner premises of McDonnell's plant. Plaintiff alleged that the real reason for his discharge was racial, and further alleged *1084 that some of his fellow workers, including his supervisors, had frequently used pejorative terms and racial epithets, and that the use of these racial slurs was an indication of the racial animus of the defendant company. However, the McDonnell Douglas Manager of Labor Relations testified that the possession of a firearm on the premises was such a serious matter that plaintiff's supervisors did not participate in the decision to discharge plaintiff and that it was he, the Manager of Labor Relations, who made the sole decision to discharge plaintiff.
The Court concedes that it is likely that the name calling, the racial slurs and epithets were prevalent in plaintiff's department, and indeed, it may be that these supervisors either participated in the unsavory conduct or condoned it. But the testimony revealed that none of these employees, including the supervisors, played the slightest role in plaintiff's discharge. The testimony of the McDonnell manager was that the aggressive conduct of the plaintiff, together with the possession of the loaded handgun, was such a serious matter that the supervisors were given no discretion in the matter. The testimony also revealed that none of the offending employees or supervisors made any decision as to plaintiff's discharge. However, ordinarily supervisors have input as to employee discharge if work performance is in question, but where there are only serious policy decisions, their views are not solicited.
In order to rule favorably to the plaintiff, the jury would have had to find that the fully loaded pistol with the three matching rounds of ammunition found in the plaintiff's vehicle, which plaintiff claimed to have selected at random, was coincidental. The jury would have had to discount the corroborating circumstance that an iron pipe was also found in the vehicle just as described by employee Jones. The jury also would have had to find that plaintiff's supervisor played some role in plaintiff's discharge, contrary to the manager's denial.
The Court has given this matter extended and careful attention, both on the pretrial motions, at the time of trial, and again when drafting this opinion. In conclusion, the Court finds that the cogent reasons for the discharge of plaintiff were not pretextual or designed to cover racial animus, but were, in fact, reasonable and fair in view of the totality of the circumstances. The Court believes that to require the defendant to proceed would have been a waste of judicial hours inasmuch as the defendant had clearly supported its rationale for discharging plaintiff in plaintiff's presentation. Furthermore, and of greatest import, this Court is convinced that the jury could not reasonably have returned a verdict favoring plaintiff in this action. In Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986), the Supreme Court, after holding that the trial court should grant summary judgment in appropriate circumstances, went on to apply that same standard for directed verdicts. It stated:
Nor are judges any longer required to submit a question to a jury merely because some evidence has been introduced by the party having the burden of proof, unless the evidence be of such a character that it would warrant the jury in finding a verdict in favor of that party. Formerly it was held that if there was what is called a scintilla of evidence in support of a case the judge was bound to leave it to the jury, but recent decisions of high authority have established a more reasonable rule, that in every case, before the evidence is left to the jury, there is a preliminary question for the judge, not whether there is literally no evidence, but whether there is any upon which a jury could properly proceed to find a verdict for the party producing it, upon whom the onus of proof is imposed. (Footnotes omitted.)
Anderson v. Liberty Lobby, Inc., supra, quoting Improvement Co. v. Munson, 14 Wall. 442, 448, 20 L.Ed. 867 (1872).
For all the above reasons, this Court finds that plaintiff did not establish a prima facie case of retaliatory discharge in that he did not satisfy prong (2) of the requirement and show that he was qualified and satisfied the normal requirement *1085 for the job because of the violation of company policy regarding handguns on the premises.
Consequently, the Court finds that its actions in directing a verdict in favor of the defendant and discharging the jury at the close of plaintiff's case were correct because plaintiff had not established a prima facie case of retaliatory discharge. The Court believes its action and ruling were correct in sustaining the defendant's motion for a directed verdict at the close of the plaintiff's case. Accordingly,
IT IS HEREBY ORDERED that defendant's motion for a directed verdict was and is granted; and
IT IS FURTHER ORDERED that plaintiff's motion for reconsideration of the Court's ruling and order is denied.